UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

POINT BLANK BODY ARMOR, INC.   *

    Counterdefendant   *

v.   *

ALLEN PRICE,   *   Civil Action No. MJG 01 CV 3256
JOSEPH KRUMMEL, and
JAMES MURRAY   *

    Counterclaimants.   *

*   *   *   *   *   *   *   *   *   *   *   *   *

## AFFIDAVIT OF ALLEN L. PRICE

I, Allen L. Price, being over the age of 18 and competent to testify on this 8th day of May 2003 hereby attest as follows:

1. I am the President and CEO of United States Ballistic Engineering, Inc., 38 Buckley Avenue, P.O. Box 981, Rising Sun, Maryland 21911.

2. I was hired by Lanxide, Inc. ("Lanxide"), a sister corporation of Point Blank Body Armor, Inc. ("Point Blank"), in April of 1998.

3. Shortly thereafter, Lanxide went out of business, but I continued my employment, until I left Point Blank at the end of September 2001, as director of research and development for Point Blank, performing certain design and testing relating to the development and evaluation of ballistic packages for Point Blank.

4. In June 2000 I informed Point Blank of my intention to leave the company. Because Point Blank wanted me to stay, we began to renegotiate the terms of my employment as well as that of Joseph Krummel and James Murray.

EXHIBIT A

employment agreement between Point Blank and Messrs. Krummel and Murray as well as myself.

5. The proposed employment agreement contemplated that Messrs. Krummel and Murray and I would be compensated through a combination of weekly salary, shares of stock in Point Blank's parent company, DHB Capital Group, Inc. ("DHB"), and warrants to purchase additional shares of DHB stock at an exercise price of two dollars ($2.00) per share.

6. The proposed agreement did not contemplate any restrictions on the DHB stock that Point Blank would be providing or that would be available through exercise of the warrants.

7. Point Blank stated that the multi-page draft agreement was too long and suggested a brief letter agreement would suffice. At no time, however, did Point Blank indicate that it disagreed with the compensation set forth in the original proposed agreement, nor did Point Blank indicate that the DHB stock that was to be distributed and available through exercise of warrants would be subject to any restrictions on our ability to immediately sell those shares. The letter agreement did not indicate that such restrictions would be imposed.

8. Based upon Point Blank's representation and my review of the letter agreement, I recommended that Messrs. Krummel, Murray and I sign the agreement, and we did so on January 2, 2001 (the "Agreement"). A copy of the version of that Agreement relating to me is attached hereto as Exhibit 1.

9. In fact, during the period of my employment by Point Blank prior to entering into the Agreement, I had been provided with DHB stock as compensation, and had been able to freely sell that stock.

10. After entering into the Agreement, I was not immediately provided with the stock certificate and warrant that I was due under the terms of the Agreement. Only several weeks

later, after contacting Dawn Schlegel, DHB's CFO, the stock certificate and warrant was forwarded to me.

11. The stock certificate forwarded by Ms. Schlegel bore a legend indicating that my rights to sell the stock were "restricted." Moreover, the warrant documents indicated that shares purchased through the exercise of the warrants would be similarly restricted. That was not consistent with my contract with Point Blank.

12. I inquired of my investment advisors at Morgan Stanley, who in turn inquired of DHB regarding the restriction imposed upon the stock certificate. Morgan Stanley informed me that Ms. Schlegel had stated that the restriction was in place until January 2002, at which time I would be able to sell the stock that had vested as of that date. Although the existence of any restriction on the sale of the stock was inconsistent with my contract with Point Blank, I had no immediate desire to sell my stock in DHB, and decided to wait until January 2002 to sell the stock and to exercise the warrants.

13. On September 14, 2001, I submitted my written notice of my resignation from Point Blank to be effective on September 28, 2001.

14. Despite repeated demand, Point Blank has refused to pay for my final week of employment concluding on September 28, 2001, amounting to $2,884.61.

15. As of my resignation from Point Blank effective September 28, 2001, I had earned as part of my compensation from Point Blank, under the terms of my employment Agreement, 10,000 shares of DHB stock, representing the number of shares that had vested over the nine months of my employment under the Agreement. In addition to the stock, I was entitled to a warrant to purchase 30,000 shares of DHB stock at an exercise price of $2.00 per share.

the nine months of my employment under the Agreement. In addition to the stock, I was entitled to a warrant to purchase 30,000 shares of DHB stock at an exercise price of $2.00 per share.

17. It was my intention to sell the 10,000 shares of DHB stock and to simultaneously purchase and sell 30,000 shares of DHB stock through the exercise of my warrants. My desire and my instructions to my agent at Morgan Stanley were to sell all of my DHB securities on January 3, 2002.

18. Subsequently, Morgan Stanley informed me that DHB had refused to remove the restriction.

I SOLEMNLY AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE CONTENTS OF THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

May 8, 2003

ALLEN L. PRICE

609583

# Point Blank BODY ARMOR
**ANSWERING TODAY'S THREATS WITH TOMORROW'S TECHNOLOGY™**

January 3, 2001

Dear Mr. Allen Price:

<u>Summary of Employment Package</u>

TITLE:   Director of Research and Development

TERM:   January 1, 2001 until December 31, 2003.

COMPENSATION:

SALARY: The Company will pay an annual salary of $150,000 (One Hundred Fifty Thousand Dollars) a year payable in weekly installments less applicable federal and state taxes.

STOCK CERTIFICATES AND OPTIONS: In addition to salary you shall receive a stock certificate for 40,000 shares of DHB Capital Group's common stock as well as a warrant to purchase an additional 120,000 shares of the Employer's Common Stock. The stock certificate vests over the life of this contract and would be pro-rated to the date the employment ceased. The warrant will vest 40,000 shares during each year of the agreement at a purchase price of $2.00 per share.

BENEFITS:

- The Company will provide health insurance.

- The employee is entitled to three (3) weeks vacation every year with no more than one week to be taken consecutively.

EXPENSES: The Company will reimburse the employee for reasonable out-of-pocket expenses in accordance with the employee manual.

- In addition, the Company will reimburse the employer $2,000 per month to defray the office expenses incurred by the Employee.

_____
Allen L. Price, Employee

EXHIBIT 1

P0061

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

POINT BLANK BODY ARMOR, INC.    *

    Counterdefendant    *

v.    *

ALLEN PRICE,    *    Civil Action No. MJG 01 CV 3256
JOSEPH KRUMMEL, and
JAMES MURRAY    *

    Counterclaimants.    *

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## AFFIDAVIT OF JOSEPH E. KRUMMEL

I, Joseph E. Krummel, being over the age of 18 and competent to testify on this 5th day of May 2003 hereby attest as follows:

1. I am employed as a technical development engineer with Barrday, Inc.

3. From my hiring in 1998 until I left Point Blank at the end of September 2001 I was a ballistics engineer charged with developing soft body armor to the NIJ standard and fragmentation armor to the U.S. military specifications.

4. My former colleague Allen Price negotiated and drafted a new employment agreement on my behalf, which I reviewed and approved prior to Mr. Price presenting the draft agreement to Point Blank in late 2000.

5. The proposed employment agreement contemplated that Messrs. Price and Murray and I would be compensated through a combination of weekly salary, shares of stock in Point Blank's parent company, DHB Capital Group, Inc. ("DHB"), and warrants to purchase additional shares of DHB stock at an exercise price of two dollars ($2.00) per share.

EXHIBIT B

6. The proposed agreement did not contemplate any restrictions on the DHB stock that Point Blank would be providing or that would be available through exercise of the warrants.

7. Point Blank stated that the multi-page draft agreement was too long and suggested a brief letter agreement would suffice. At no time, however, did Point Blank indicate that it disagreed with the compensation set forth in the original proposed agreement, nor did Point Blank indicate that the DHB stock that was to be distributed and available through exercise of warrants would be subject to any restrictions on our ability to immediately sell those shares. The letter agreement did not indicate that such restrictions would be imposed.

8. Based upon Point Blank's representation and my review of the letter agreement, I agreed with Mr. Price that the agreement was acceptable as drafted, and I signed the agreement on January 2, 2001 (the "Agreement"). A copy of the version of that Agreement relating to me is attached hereto as Exhibit 1.

9. In fact, when I was originally hired by Point Blank's sister corporation, Lanxide, in 1998, part of my compensation took the form of DHB stock, which I was able to and did immediately sell.

10. After entering into the Agreement, I was not immediately provided with the stock certificate and warrant that I was due under the terms of the Agreement. Only several weeks later, after contacting Dawn Schlegel, DHB's CFO, the stock certificate and warrant was forwarded to me.

11. The stock certificate forwarded by Ms. Schlegel bore a legend indicating that my rights to sell the stock were "restricted." Moreover, the warrant documents indicated that shares purchased through the exercise of the warrants would be similarly restricted. That was not consistent with my contract with Point Blank.

12. Mr. Price inquired of my investment advisors at Morgan Stanley, who in turn inquired of DHB regarding the restriction imposed upon the stock certificate. Morgan Stanley informed us that Ms. Schlegel had stated that the restriction was in place until January 2002, at which time I would be able to sell the stock that had vested as of that date. Although the existence of any restriction on the sale of the stock was inconsistent with my contract with Point Blank, I had no immediate desire to sell my stock in DHB, and decided to wait until January 2002 to sell the stock and to exercise the warrants.

13. On September 14, 2001, I submitted my written notice of my resignation from Point Blank to be effective on September 28, 2001.

14. Despite repeated demand, Point Blank has refused to pay for my final week of employment concluding on September 28, 2001, amounting to $2,500.

15. As of my resignation from Point Blank effective September 28, 2001, I had earned as part of my compensation from Point Blank, under the terms of my employment Agreement, 5,000 shares of DHB stock, representing the number of shares that had vested over the nine months of my employment under the Agreement. In addition to the stock, I was entitled to a warrant to purchase 22,500 shares of DHB stock at an exercise price of $2.00 per share.

16. It was my intention to sell the 5,000 shares of DHB stock and to simultaneously purchase and sell 22,500 shares of DHB stock through the exercise of my warrants. My desire and my instructions to my agent at Morgan Stanley were to sell all of my DHB securities on January 3, 2002.

17. Subsequently, Morgan Stanley informed me that DHB had refused to remove the restriction.

I SOLEMNLY AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE CONTENTS OF THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

May 5, 2003

*[signature]*
JOSEPH E. KRUMMEL

# Point Blank BODY ARMOR
### ANSWERING TODAY'S THREATS WITH TOMORROW'S TECHNOLOGY™

January 3, 2001

Dear Mr. Joseph Krummel:

<u>Summary of Employment Package</u>

TITLE:   Ballistics Engineer

TERM:   January 1, 2001 until December 31, 2003.

COMPENSATION:

SALARY: The Company will pay an annual salary of $130,000 (One Hundred Thirty Thousand Dollars) a year payable in weekly installments less applicable federal and state taxes.

STOCK CERTIFICATES AND OPTIONS: In addition to salary you shall receive a stock certificate for 20,000 shares of DHB Capital Group's common stock as well as a warrant to purchase an additional 90,000 shares of the Employer's Common Stock. The stock certificate vests over the life of this contract and would be pro-rated to the date the employment ceased. The warrant will vest 30,000 shares during each year of the agreement at a purchase price of $2.00 per share.

BENEFITS:

- The Company will provide health insurance.

- The employee is entitled to three (3) weeks vacation every year with no more than ~~one~~ two week to be taken consecutively.

EXPENSES: The Company will reimburse the employee for reasonable out-of-pocket expenses in accordance with the employee manual.

*[signature]*
Joseph Krummel, Employee

Point Blank Body Armor Inc. • 4031 N.E. 12th Terrace • Oakland Park, FL 33334 • 954-630-0900 • 800-413-5155 • Fax 954-630-9225

**EXHIBIT 1**

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

POINT BLANK BODY ARMOR, INC.          *

    Counterdefendant                         *

v.                                                               *

ALLEN PRICE,                                       *          Civil Action No. MJG 01 CV 3256
JOSEPH KRUMMEL, and
JAMES MURRAY                                 *

    Counterclaimants.                         *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### AFFIDAVIT OF JAMES W. MURRAY

    I, James W. Murray, being over the age of 18 and competent to testify on this 7th day of May 2003 hereby attest as follows:

    1.    I am employed as Vice President of United States Ballistic Engineering, Inc. ("USBE"), 38 Buckley Avenue, P.O. Box 981, Rising Sun, Maryland 21911.

    3.    My former colleague at Point Blank, Allen Price, negotiated and drafted an employment agreement on my behalf, which I reviewed and approved prior to Mr. Price presenting the draft agreement to Point Blank in late 2000.

    4.    The proposed employment agreement contemplated that Messrs. Price and Krummel and I would be compensated through a combination of weekly salary, shares of stock in Point Blank's parent company, DHB Capital Group, Inc. ("DHB"), and warrants to purchase additional shares of DHB stock at an exercise price of two dollars ($2.00) per share.

    5.    The proposed agreement did not contemplate any restrictions on the DHB stock that Point Blank would be providing or that would be available through exercise of the warrants.

EXHIBIT C

6. In fact, Messrs. Price and Krummel informed me that they had been able to freely sell DHB stock that they had received under their earlier employment with Point Blank's sister corporation, Lanxide, in 1998.

7. Point Blank stated that the multi-page draft agreement was too long and suggested a brief letter agreement would suffice. At no time, however, did Point Blank indicate that it disagreed with the compensation set forth in the original proposed agreement, nor did Point Blank indicate that the DHB stock that was to be distributed and available through exercise of warrants would be subject to any restrictions on our ability to immediately sell those shares. The letter agreement did not indicate that such restrictions would be imposed.

8. Based upon Point Blank's representation and my review of the letter agreement, I agreed with Mr. Price that the agreement was acceptable as drafted, and I signed the agreement in early January 2001 (the "Agreement"). A copy of the version of that Agreement relating to me is attached hereto as Exhibit 1.

9. After entering into the Agreement, I was not immediately provided with the stock certificate and warrant that I was due under the terms of the Agreement. Only several weeks later, were the stock certificate and warrant forwarded to me.

10. Mr. Price inquired of our investment advisor at Morgan Stanley, regarding our ability to sell the stock and the shares of stock that could be purchased through the exercise of the warrant. Morgan Stanley contacted DHB. Morgan Stanley told Mr. Price, who then told me, that we would not be able to sell our stock or exercise our warrants until January 2002. Although, under my Agreement with Point Blank, I should have been able to immediately sell my DHB stock, I had no immediate desire to do so, and decided to wait until January 2002 to sell my stock and to exercise the warrant.

11. On September 14, 2001, I submitted my written notice of my resignation from Point Blank to be effective on September 28, 2001.

12. Despite repeated demand, Point Blank has refused to pay for my final week of employment concluding on September 28, 2001, amounting to $1,250.

13. As of my resignation from Point Blank effective September 28, 2001, I had earned as part of my compensation from Point Blank, under the terms of my employment Agreement, 1,250 shares of DHB stock, representing the number of shares that had vested over the nine months of my employment under the Agreement. In addition to the stock, I was entitled to a warrant to purchase 10,000 shares of DHB stock at an exercise price of $2.00 per share.

14. It was my intention to sell the 1,250 shares of DHB stock and to simultaneously purchase and sell 10,000 shares of DHB stock through the exercise of my warrants. My desire and my instructions to my agent at Morgan Stanley were to sell all of my DHB securities on January 3, 2002.

15. Subsequently, Morgan Stanley informed me that DHB had refused to remove the restriction.

I SOLEMNLY AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE CONTENTS OF THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

May 7, 2003

_____
JAMES W. MURRAY

# Point Blank BODY ARMOR
**ANSWERING TODAY'S THREATS WITH TOMORROW'S TECHNOLOGY™**

January 3, 2001

Dear Mr. James Murray:

### Summary of Employment Package

TITLE:   Ballistics Engineer

TERM:    January 1, 2001 until December 31, 2003.

COMPENSATION:

SALARY: The Company will pay an annual salary of $65,000 (Sixty Five Thousand Dollars) a year payable in weekly installments less applicable federal and state taxes.

STOCK CERTIFICATES AND OPTIONS: In addition to salary you shall receive a stock certificate for 5,000 shares of DHB Capital Group's common stock upon execution of this agreement and an additional 5,000 shares of DHB Capital Group's common stock on January 3, 2003. In addition you will receive a warrant to purchase an additional 40,000 shares of the Employer's Common Stock. The stock certificate vests over the life of this contract and would be pro-rated to the date the employment ceased. The warrant will vest 13,333 shares during each year of the agreement at a purchase price of $2.00 per share.

BENEFITS:

- The Company will provide health insurance. *Effective beginning Feb 1, 2001*

- The employee is entitled to two weeks of vacation during the first year and three (3) weeks vacation every year thereafter with no more than ~~one~~ *TWO* week to be taken consecutively.

EXPENSES: The Company will reimburse the employee for reasonable out-of-pocket expenses in accordance with the employee manual.

*[signed] James W. Murray*
James Murray, Employee

Point Blank Body Armor Inc. • 4031 N.E. 12th Terrace • Oakland Park, FL 33334 • 954-630-0900 • 800-413-5155 • Fax 954-630-9225

EXHIBIT 1

M0006

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| POINT BLANK BODY ARMOR, INC. | * | |
| Counterdefendant | * | |
| v. | * | |
| ALLEN PRICE, | * | Civil Action No. MJG 01 CV 3256 |
| JOSEPH KRUMMEL, and | | |
| JAMES MURRAY | * | |
| Counterclaimants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### AFFIDAVIT OF SCOTT E. BAUERMASTER

I, Scott E. Bauermaster, being over the age of 18 and competent to testify on this 6th day of May 2003 hereby attest as follows:

1.  I am employed as financial advisor with Raymond James Financial Services, 208 Willow Valley Square, Lancaster, Pennsylvania 17602.

2.  Prior to my employment as a financial advisor at Raymond James, I was financial advisor at Morgan Stanley, where my clients included Messrs. Allen L. Price, Joseph E. Krummel, and James W. Murray.

3.  Although Messrs. Price, Krummel, and Murray were all clients of mine, I dealt almost exclusively with Mr. Price and understood that he was empowered to speak on behalf of Messrs. Krummel and Price.

4.  In approximately March 2001, Mr. Price contacted me and explained that he and Messrs. Krummel and Murray had received, as part of their compensation under employment agreements each had entered into in January 2001 with Point Blank Body Armor, Inc. ("Point Blank"), certificates for DHB Capital Group, Inc. ("DHB") restricted stock, and warrants to

EXHIBIT D

purchase shares of stock in DHB at an exercise price of $2.00 per share. DHB is the parent company of Point Blank.

5. Mr. Price stated that he and Messrs. Krummel and Murray were concerned because, when they received the DHB stock certificates, several weeks after entering their new employment agreements, the certificates bore a legend indicating that the securities were restricted. Moreover, the warrant documents indicate that any stock purchase in connection with the warrants would be similarly restricted. He requested that I contact DHB and inquire regarding the nature of the restrictions.

6. My colleague, Cathy Dubbs, a Morgan Stanley Sales Assistant, sent a restricted securities checklist to the Restricted Securities Department in New York.

7. On March 20, 2001 Erin Wolf, of Restricted Securities, emailed Ms. Dubbs stating that Mr. Price received 40,000 shares in January 2001, but that he could not sell those shares until at least January 2002. We passed this information along to Messrs. Price, Krummel, and Murray.

8. On or about December 22, 2001, Mr. Price contacted me and stated that he and Messrs. Krummel and Murray desired to sell the shares of DHB stock, which had vested in them under their respective employment agreements with Point Blank, and to affect a cashless sale of the warrants that had vested over that same period. During that conversation, Mr. Price directed me to sell all of the DHB stock held by him and Messrs. Krummel and Murray on January 3, 2002.

9. On January 3, 2002, Mr. Krummel contacted me to re-iterate Mr. Price's earlier instructions to sell the stock held by Messrs. Price, Krummel, and Murray and to affect a cashless sale of the warrants.

609583

2

10. Since the securities were restricted, we notified our restricted securities agent in New York, Sybil T. Schaffrath, of our clients' intent to sell their DHB securities as soon as the restriction was removed.

11. Ms. Schaffrath was, however, informed by Dawn Schlegel of DHB that it refused to remove the restriction, thus making the securities unmarketable.

12. I informed Messrs. Price, Krummel, and Murray that DHB would not remove the restriction.

13. On January 3, 2002, that date I would have been able to sell the shares of DHB stock that had vested in Messrs. Price, Krummel, and Murray and to affect a cashless sale of the warrants that had vested in each, the stock traded at between $5.89 and $6.05 per share, with a closing price of $6.01.

14. I believe that I would have been able to sell Messrs. Price, Krummel, and Murray's shares of DHB stock for $6.00 per share.

15. After deducting commissions and handling fees, and less the $2.00 per share payment to DHB upon exercising the warrants, Mr. Price would have netted $175,104, representing $58,639 for the sale of his 10,000 shares of DHB stock and $116,465 for the cashless sale of his warrants to purchase 30,000 shares of DHB stock at an exercise price of $2.00 per share; Mr. Krummel would have netted $96,530, representing $29,185 for the sale of 5,000 shares of DHB stock and $87,273 for the cashless sale of his warrants to purchase 22,500 shares of DHB stock at an exercise price of $2.00 per share; and Mr. Murray would have netted $45,862, representing $7,223 for the sale of 1,250 shares of DHB stock and $38,639 for the cashless sale of his warrants to purchase 10,000 shares of DHB stock at an exercise price of $2.00 per share.

I SOLEMNLY AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE CONTENTS OF THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

May 12, 2003

_____
SCOTT E. BAUERMASTER

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| POINT BLANK BODY ARMOR, INC., | * | |
| Plaintiff, | * | |
| v. | * | |
| ALLEN PRICE, JOSEPH KRUMMEL, and JAMES MURRAY, | * | Civil Action No. MJG 01 CV 3256 |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## AFFIDAVIT OF ROBERT S. BRENNEN

STATE OF MARYLAND
CITY OF BALTIMORE, to wit:

I, Robert S. Brennen, hereby attest as follows:

1. I am over eighteen (18) years of age and competent to attest to the following facts, of which I have personal knowledge.

2. I am and have been a member in good standing of the Maryland Bar since December 22, 1987. I am and have been a member in good standing of the Bar of this Court since February 19, 1988.

3. I am and have been a principal with the law firm of Miles & Stockbridge P.C. since January 1, 1996.

4. Miles & Stockbridge has represented the Defendants and Counterclaimants throughout this matter. My now former partner, the Honorable Richard D. Bennett, and I were directly involved in that representation.

EXHIBIT E

5.  Through May 1, 2003, the total amount of attorneys' fees and expenses that have been generated in connection with our representation of the Defendants and Counterclaimants is One Hundred Eight-Six Thousand Five Hundred Thirty-Six Dollars and Sixty-Eight Cents ($186,536.68). Based upon my decade of experience in connection with the litigation of matters of similar size and complexity, I believe that all of these fees and expenses were reasonable given the factual and legal issues presented in this case. Indeed, those fees and expenses could have reasonably been much higher had Defendants and Counterclaimants not narrowed their discovery to a single deposition of Plaintiff's corporate designee. Moreover, while much of the fees and expenses generated related to our defense of Plaintiff's claims for breach of contract and misappropriation of trade secrets, in light of the necessity of successfully defending those claims in order to prevail on the counterclaims, I believe that the entire amount is reasonably attributable the prosecution of the counterclaims.

I SOLEMNLY AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE CONTENTS OF THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

May, 5th 2003

ROBERT S. BRENNEN

2