**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
– Northern Division –

| | |
|---|---|
| POINT BLANK BODY ARMOR, INC. | * |
| Plaintiff, | * |
| v. | * |
| ALLEN PRICE, JOSEPH KRUMMEL, and JAMES MURRAY | * |
| Defendants. | * |
| | * Civil Action No. MJG 01 CV 3256 |
| ALLEN PRICE, JOSEPH KRUMMEL, and JAMES MURRAY | * |
| Counter-plaintiffs, | * |
| v. | * |
| POINT BLANK BODY ARMOR, INC. | * |
| Counter-defendant. | * |

**PROPOSED PRETRIAL ORDER**

Plaintiff and Counter–defendant Point Blank Body Armor, Inc. ("Point Blank"), and Defendants and Counter-plaintiffs Allen Price ("Price"), Joseph Krummel ("Krummel"), and James Murray ("Murray"), by their respective undersigned attorneys, pursuant to F.R.Civ.P. 16, L.R. 106, and the Court's Trial Schedule Order of April 1, 2003, propose the following pretrial order in this matter.

A.  **<u>Defendants and Counter-plaintiffs' Statement of Facts</u>**[1]

On January 3, 2001, after several weeks of negotiations, Price, Krummel, and Murray entered into employment agreements with Point Blank. Under the agreement they were to receive compensation from Point Blank consisting of salary, stock in Point Blank's parent, DHB Industries, Inc., and options to purchase additional DHB stock at a price of $2.00 per share. Several weeks after the agreements were entered, Point Blank sent stock certificates and warrants (rather than options) to purchase DHB stock that indicated, contrary to the terms of the employment agreements, that the stock represented by the certificates, and the stock that could be purchased through exercise of the warrants, was under restriction preventing their resale. Based upon Point Blank and DHB's representations that the stock could be sold and the warrants exercised as of January 2002, Price, Krummel, and Murray decided to continue their employment with the intention of selling the stock and exercising the warrants after the New Year. However, they soon became disillusioned with Point Blank and it's parent's business practices. Because of that disillusionment, and their desire to pursue other opportunities, Price, Krummel, and Murray resigned their employment with Point Blank effective September 28, 2001. Point Blank breached its contractual and statutory obligations to Price, Krummel, and Murray by failing to pay them their last week of salary. They further breached those obligations by failing to provide Price, Krummel and Murray with stock and stock options that could be sold and exercised freely, and by failing to allow them to sell their stock and to exercise their options as of January 3, 2002, at which time the DHB stock was trading at a price of $6.00 per

---

[1] Because Plaintiff Point Blank's claims were all disposed of by the Court on Defendants' motion for summary judgment, such that the trial will concern only claims asserted by Defendants, the parties have agreed to structure this pretrial order and to conduct the trial as though Defendants were the original plaintiffs.

share.[2]  As a result of those breaches, and Point Blank's unjust retention of the benefit of their services, Price, Krummel, and Murray suffered damages of $177,988.61, $99,030.00, and $47,110.00, respectively.  Because those breaches constituted violations of the Maryland Wage Payment and Collection Act, MD. CODE ANN., LAB. & EMPL. § 3-501 et seq., and because Point Blank's obligations were not and are not subject to bona fide dispute, those damages should be trebled and Price, Krummel, and Murray are entitled to recover the attorneys' fees and expenses that they have incurred in the prosecution of those claims.

In pursuit of these claims, Price Krummel, and Murray rely on theories of :

A. Breach of Contract [Counts I (Price), IV (Krummel), and VII (Murray)

B. Unjust Enrichment [Counts II (Price), V (Krummel), and VIII (Murray)

C. Violation of the Maryland Wage Payment and Collection Act, MD. CODE ANN., LAB. & EMPL. § 3-501 et seq. [Counts III (Price), VI (Krummel), and IX (Murray).

On November 1, 2001, Point Blank filed its Verified Complaint for Injunctive Relief and Damages against Price, Krummel, and Murray alleging, among other things, misappropriation of trade secrets in violation of MD. CODE ANN., COM. LAW II § 11-1201 et seq.  Point Blank continued to pursue those claims until the Court dismissed them on March 13, 2003 on Defendants' motion for summary judgment.  At no time during that period did Point Blank have any good faith basis for its claims.  Moreover, it is clear from the statements of David H. Brooks, and by Point Blank's willful failure to adequately investigate the relevant facts, that Point Blank pursued its trade secret claims for

---

[2] Point Blank's assertion that, notwithstanding the parties' agreement, it could not have provided Defendants with registered, unrestricted shares of stock is belied by the admitted fact that DHB could have made such shares available by simply filing a registration statement with the Securities Exchange Commission.

the improper purposes of causing Defendants to incur the expense of defense and harm to their struggling business. For these reasons, Price, Krummel, and Murray are entitled to recover from Point Blank the attorneys' fees and expenses that they incurred in the defense of those claims.

In support of their claims for fees and expenses in defending Point Blank's trade secret claims, Price, Krummel, and Murray rely upon MD. CODE ANN., COM. LAW II § 11-1204, as interpreted by this Court in Contract Materials Processing, Inc. v. Kataleuna GmbH Catalysts, et al., 222 F. Supp. 2d 733 (D. M.D. September 19, 2002).

**B.    Plaintiff And Counter-defendant's Statement of Facts**

Allen Price and Joseph Krummel became employed by Lanxide Armor Products, a subsidiary of DHB Capital Group, in 1998. In October 1999, Lanxide terminated operatations and Price and Krummel began working for Point Blank, Inc., another subsidiary of DHB. In 2000, Price and Krummel considered resigning their employment with Point Blank in order to go into business for themselves. To that end, they formed a company, United States Ballistic Engineering, Inc., (USBE). Sandra Hatfield, Point Blank's chief operating officer, and David Brooks, DHB's president, asked Price and Krummel to reconsider leaving Point Blank. After a period of negotiation, Price, Krummel and a third individual, James Murray, agreed to work for Point Blank for a period of three years.

Price's attorney prepared draft employment agreements for all three individuals, and the drafts were submitted to Point Blank. Point Blank viewed the documents as unnecessarily complex, and instead prepared one page memoranda setting forth the terms of the three individuals' employment, which were signed by them on or about January 3, 2001. These agreements were for a term of three years and provided that Price, Krummel and Murray would each receive an annual salary, stock in DHB

Capital Group, and warrants to purchase additional shares of the stock at a price of $2.00 per share. The agreements were silent as to whether the stock and any stock which might be acquired pursuant to the warrants would be subject to any restrictions. In fact, DHB had no unrestricted stock available for issuance in January 2001.

The agreements each provided that the stock certificate would "vest… over the life of the contract and be pro-rated to the date the employment ceased." They also provided that the warrants would "vest [1/3] of the shares during each year of the agreement…."

On or about January 18, 2001, DHB issued the stock certificates and warrants in the amounts specified in the agreements, and distributed them to Price, Krummel and Murray. The stock certificates bore prominent legends identifying them as "restricted" and indicating that they had not been registered with the Securities and Exchange Commission. The warrants also indicated that any stock acquired pursuant to them would be similarly restricted. Price, Krummel and Murray observed the legends on the stock, and consulted with a stockbroker about the import thereof, but none of them ever asserted to Point Blank or DHB that they should have received unrestricted rather than restricted securities. Although they made some generic inquiries about the effect of the restrictions to their stockbroker, none of them took affirmative steps to have the restrictions lifted, and none of them tendered any funds to DHB in order to exercise any portion of the warrants.

On September 14, 2001, Price, Krummel, and Murray notified Point Blank that they were resigning their employment effective September 28, 2001, and immediately after their departure began to compete with Point Blank through USBE. Their departures were exceptionally difficult for Point Blank,

as they occurred just days after the events of September 11, 2001, which created intense and immediate demand for Point Blank's products.

Point Blank did not breach its employment contracts with Price, Krummel and Murray because they were paid for all services actually performed.

In their Amended Counterclaim, Price, Krummel and Murray asserted three claims: Breach of Contract (Count I), Unjust Enrichment (Count II), and Violation of the Maryland Wage Payment and Collection Act. The amended counterclaim did not assert in any of these three Counts that Point Blank was obligated to provide Price, Krummel and Murray with "stock and stock options that could be sold and exercised freely" as alleged in their statement of facts. Rather, each Count alleged only that Price, Krummel and Murray were entitled to some number of shares of DHB "common stock." Such stock was provided and accepted. Thus, Price, Krummel and Murray may not now assert that they should have been issued unrestricted stock. Similarly, the employment agreements called for "warrants" (not "options" as alleged in the Statement of Facts) and "warrants" were provided and accepted. Point Blank did not breach its contract of employment by restricting the sale of the stock, as the rules of the Securities and Exchange Commission do not permit the sale of unrestricted stock which has been held for less than one year from the acquisition date; in this context, the acquisition date is the vesting date. Nor were Price, Krummel and Murray ever prohibited from exercising their warrants, as they never tendered any funds to effect such exercise as required under the terms of the warrants. Even had they exercised the warrants, they would have been required to hold any stock acquired pursuant to such exercise for a period of one year.

Price, Krummel and Murray are not entitled to recover on their unjust enrichment claim because there is no evidence that Point Blank was enriched in the amounts claimed.

Price, Krummel and Murray are not entitled to recover treble damages or attorneys' fees under the Maryland Wage Payment and Collection Act because there was, in any event, a bona fide dispute over the terms of the agreements and the right to dispose of any portion of any stock to which they might have been entitled.

Price, Krummel and Murray's claim for attorneys' fees and expenses in connection with their defense of Point Blank's claim under the Maryland Uniform Trade Secrets Act is not a part of their Amended Counterclaim, has already been decided by the Court, and is not an issue to be decided by the jury in this trial, or by any jury.[3]

### C.     Required Amendments To The Pleadings.

No amendments to the pleadings are required at this time.

### D.     Issues To Be Abandoned.

No issues in the pleadings are to be abandoned at this time.

---

[3]  The very case cited by Price, Krummel and Murray in their Statement of Facts, Contract Materials Processing, Inc. v. Kataleuna GmbH Catalysts et al, 222 F. Supp. 2d 733 (D. Md. 2002) reveals that the determination of whether a party is entitled to an award of attorneys' fees and costs under MUTSA is for the Court. In that case, Judge Davis granted summary judgment on a MUTSA claim to a defendant, but permitted other claims to go forward to trial. The defendant sought a fee award, which was granted by Judge Davis on the peculiar facts of that case. What Judge Davis did *not* do is to submit the fee (which necessarily included an evaluation of "bad faith") to the jury, which is what the Counter-Plaintiffs here seek. In general, determinations of fees are issues for the Court, not for the jury. See. Admiral Mortgage, Inc. v. Cooper, 357 Md. 533, 745 A. 2d 1026 (2000); Caffrey v. Department of Liquor Control, 370 Md. 272, 805 A. 2d 268 (2002). Moreover, Fed. R.Civ. P. 54(d)(2) explicitly provides that "claims for attorneys' fees and related non-taxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial." The Rule 54(b)(2) procedure was that observed by Judge Davis in Cataleuna, upon which Counter-Plaintiffs purport to rely. MUTSA does not contain such a specific provision; rather, it contain two separate clauses – one for "damages" (§11-203) and one for "attorney's fees" (§11-204).

E. **Stipulations Of Fact.**

Both sides expect to request that the other stipulate to the authenticity and admissibility of numerous documents on their respective exhibit lists, as well as certain facts that would otherwise be subject to legitimate judicial notice, such as the trading price of DHB Industries stock on various dates.

Plaintiff/Counter-Defendant will object to the introduction of any exhibits in support of Defendants/Counter-Plaintiffs' claim for attorneys' fees and costs in connection with the MUTSA claim.

F. **Damages Claimed or Other Relief Sought.**

Price seeks an award of damages in the amount of $177,988.61, plus pre and post judgment interest with respect to Counts I, II, and III of the Counterclaim, and, assuming that the Jury concludes there was no bona fide dispute with respect to his claim under the Maryland Wage Payment and Collection Act in Count III, will request that the Court enter judgment in his favor for three times that amount or **$533,965.83**, plus pre and post judgment interest.

Krummel seeks an award of damages in the amount of $99,030.00, plus pre and post judgment interest with respect to Counts IV, V, and VI of the Counterclaim, and, assuming that the Jury concludes there was no bona fide dispute with respect to his claim under the Maryland Wage Payment and Collection Act in Count VI, will request that the Court enter judgment in his favor for three times that amount or **$297,090.00**, plus pre and post judgment interest.

Murray seeks an award of damages in the amount of $47,110.00, plus pre and post judgment interest with respect to Counts VII, VIII, and IX of the Counterclaim, and, assuming that the Jury

concludes there was no bona fide dispute with respect to his claim under the Maryland Wage Payment and Collection Act in Count IX, will request that the Court enter judgment in his favor for three times that amount or **$141,330.00**, plus pre and post judgment interest.

In addition to the above, assuming that the Jury concludes there was no bona fide dispute with respect to their claims under the Maryland Wage Payment and Collection Act in Counts III, VI, and IX, Price, Krummel, and Murray will move the Court to enter judgment in their favor with respect to the attorneys' fees and expenses they have incurred in connection with the prosecution of those claims in accordance with F.R.Civ.P. 54(d)(2) and L.R. 109.2.

In addition to the above, assuming that the Jury concludes that Point Blank brought and pursued its claims for trade secret misappropriation in bad faith, Price, Krummel, and Murray will move the Court to enter judgment in their favor with respect to the attorneys' fees and expenses they have incurred in connection with the defense of those claims in accordance with F.R.Civ.P. 54(d)(2) and L.R. 109.2.

**G.     Exhibit List.**

**Defendants and Counter-Plaintiffs' Exhibits**

1. March 1, 2001 E-mail from PubSafMktg to Lauren Jackson, Ronda Graves, and Al Price re Competitive Pricing

2. June 13, 2000 letter from Allen L. Price to Sandra Hatfield

3. USBE PowerPoint® presentation

4. December 22, 2000 letter from Allen L. Price to David Brooks

5. December 22, 2000 E-mail from Al Price to Joe Krummel and Jim Murray re DHB Offer

6. December 26, 2000 E-mail from Al Price to Bronson Hokuf Family, Bronson R. Hokuf, Jim Murray, Joe Krummel, and John Judway

7. December 26, 2000 letter from Al Price to Joe Krummel and Jim Murray

8. Draft Employment Agreement between Allen L. Price and Point Blank Body Armor, Inc.

9. Draft Employment Agreement between Joseph Krummel and Point Blank Body Armor, Inc.

10. Draft Employment Agreement between James Murray and Point Blank Body Armor, Inc.

11. January 9, 2001 letter from Allen L. Price to Sandra Hatfield

12. January 3, 2001 Employment Agreement between Allen Price and Point Blank Body Armor, Inc.

13. January 3, 2001 Employment Agreement between Joseph Krummel and Point Blank Body Armor, Inc.

14. January 3, 2001 Employment Agreement between James Murray and Point Blank Body Armor, Inc.

15. January 18, 2001 stock certificate, Allen Price, owner.

16. January 18, 2001 stock certificate, Joseph Krummel, owner.

17. January 18, 2001 stock certificate, James Murray, owner.

18. Warrant to Purchase Shares of Common Stock issued to Allen Price.

19. Warrant to Purchase Shares of Common Stock issued to Joseph Krummel.

20. Warrant to Purchase Shares of Common Stock issued to James Murray.

21. April 29, 1998 stock certificate, Joseph Krummel, owner.

22. June 2001 Shareholder Meeting and Proxy information package.

23. May 1, 2001 E-mail from Edward Lavigne to Al Price, Jim Murray, and Joe Krummel re NATICK CBD Notice

24. May 19, 2001 E-mail from Joe Krummel to Sandra Hatfield.

25. June 21, 2001 E-mail from Ed Lavigne to Jim Murray

26. Memo from Jim Murray to Ed Lavigne re patent application for ballistic dry suit

27. March 12, 2001 Letter from Edward Lavigne to Gloria Tsui-Yip

28. June 22, 2001 E-mail from Joe Krummel to Frank Hermann

29. July 2, 2001 E-mail from Joe Krummel to DHB Armor

30. July 5, 2001 E-mail from Ed Lavigne to Al Price

31. July 20, 2001 E-mail from Ronda Graves to Joe Krummel

32. Ronda Graves notes from exit interview (Hatfield Deposition Exhibit 26)

33. October 1, 2001 E-mail from Joe Krummel to Ronda Graves

34. October 23, 2001 E-mail from Carlos Carpintero to Joe Krummel

35. October 23, 2001 E-mail from Carlos Carpintero to Joe Krummel

36. October 31, 2001 E-mail from Joe Krummel to Carlos Carpintero

37. December 10, 2001 E-mail from Dawn Schlegel to Joe Krummel

38. Point Blank Complaint

39. December 31, 2001 E-mail from Catherine Dubbs to Allen Price

40. January 7, 2002 Morgan Stanley Telex re: Client Allen Price

41. January 7, 2002 Morgan Stanley Telex re: Client Joseph Krummel

42. January 7, 2002 Morgan Stanley Telex re: Client James Murray

43. Amended Notice to take Deposition of Designee of Plaintiff Point Blank

44. Notice to take Deposition of Designee of DHB Industries, Inc.

45. DHB stock trading price history

46. Point Blank Body Armor, Inc.'s Answers to Defendants' Interrogatories

47. Form 10-K/A filed by DHB Industries, Inc. for year ended December 31, 2001

48. Form 10-K filed by DHB Industries, Inc. for year ended December 31, 2002

49. Form 10-KSB filed by DHB Industries, Inc. for year ended December 31, 1998

50. Barrday, Inc. Memorandum re Argus® (Exhibit to August 12, 2002 Affidavit of Terry Butryn)

51. Point Blank vest submitted in support of Defendants' motion for summary judgment

52. Screen shots from E-Bay® Internet auction site listing Point Blank vests for sale to public

53. Krummel "R&D" Sheets (Hatfield Deposition Exhibit 31)

54. Complaint and Demand for Jury Trial in American Body Armor & Equipment, Inc. v. Protective Apparel Corporation of America, U.S.D.C. M.D. Florida

55. Answer of Defendant Protective Apparel Corporation of America American Body Armor & Equipment, Inc. v. Protective Apparel Corporation of America, U.S.D.C. M.D. Florida

56. Form 10-Q filed by DHB Industries for the period ending September 30, 2001

57. Gator Hawk press release

58. Morgan Stanley Dean Witter file regarding Price, Krummel, and Murray.

59. Form SB-2 filed by DHB Capital Group, Inc. in July, 1997.

Defendants/Counter-Plaintiffs reserve the right to use and to seek admission of any exhibits identified by Plaintiff in this pretrial order.

**Plaintiff and Counter-Defendant's Exhibits**

1. September 14, 2001 resignation letter from Allen L. Price to Sandra Hatfield

2. September 14, 2001 resignation letter from Joseph Krummel to Sandra Hatfield

3. September 14, 2001 resignation letter from James Murray to Sandra Hatfield

4. September 13, 2001 Letter of Understanding between Gator Hawk Armor and USBE

5. October 17, 2001 "Dear Prospective Customer" letter from Gator Hawk

6. USBE Web-site print-out

7. USBE Articles of Incorporation

Plaintiff/Counter-Defendant reserves the right to use and seek admission of any exhibits identified by Defendants/Counter-Plaintiffs in this pre-trial order.

**H.     Witness List.**

**Defendants and Counter-Plaintiffs' Witnesses**

1. Mr. Allen Price.

2. Mr. Joseph Krummel.

3. Mr. James Murray.

4. Mr. Scott Bauermaster of Raymond James in Lancaster, Pennsylvania.

5. Mr. Terrence Butryn of Barrday, Inc. in Cambridge, Ontario, Canada.

6. Ms. Sandra Hatfield of Point Blank in Oakland Park, Florida.

7. Mr. David H. Brooks of DHB Industries, Inc. of Carle Place, New York.

8.  Ms. Dawn Schlegel of DHB Industries, Inc. of Carle Place, New York.

9.  Ms. Catherine Dubbs of Morgan Stanley Dean Witter in Lancaster, Pennsylvania.

10. Ms. Sybil Schaffrath of Morgan Stanley Dean Witter in Jersey City, New Jersey.

11. Custodian of records, Morgan Stanley Dean Witter.

Defendants reserve the right to call any witnesses identified by Plaintiff in this pretrial order.

**Plaintiff/Counter-Defendant's Witnesses**

1.  Shaye Sinanian of New York, New York

Plaintiff/Counter-Defendant reserves the right to call any witnesses identified by

Defendants/Counter-Plaintiffs in this pre-trial order.

**J.**     **Expert Witnesses.**

   None.

**K.**     **Deposition Designations.**

**Defendants and Counter-Plaintiffs' Deposition Designations**

Deposition of Sandra Hatfield, Corporate Designee for Point Blank, taken July 24, 2002

Page 2, line 7 through line 14
Page 4, line 18 through page 5, line 9
Page 17, line 21 through page 18, line 1
Page 24, line 11 through page 25, line 1
Page 28, line 15 through page 29, line 10
Page 31, lines 3 through 9
Page 89, line 7 through page 90, line 12.
Page 203, line 16 through page 204, line 13
Page 210, line 12 through page 211, line 6
Page 217, line 14 through page 219, line 10
Page 220, line1 through page 220, line 21
Page 222, line 18 through page 223, line 11
Page 224, line 21 through page 226, line 13
Page 239, line 5 through page 240, line 8

Page 241, lines 3 through 10
Page 244, line 4 through page 246, line 9
Page 247, lines 8 through 21
Page 250, lines 7 through 18
Page 252, lines 1 through 14
Page 256, line 7 through page 268, line 2.
Page 268, line 10 through page 270, line 7
Page 272, line 5 through page 273, line 8
Page 281, lines 6 through 13
Page 282, line 16 through page 282, line 10
Page 290, line 8 through page 304, line 7
Page 304, line 20 through page 312, line1
Page 312, lines 10 through 16
Page 318, line 6 through page 319, line 18
Page 320, line17 through page 321, line 6
Page 322, line 6 through page 326, page 5
Page 329, line 20 through page 330, line 4
Page 330, lines 5 through 19
Page 331, line 12 through page 334, line 5
Page 339, line 6 through page 341, line 7
Page 342, line 5 through page 345, line 1
Page 346, line 10 through page 348, line 6
Page 352, line 18 through page 353, line 2
Page 356, lines 6 through 13
Page 360, line 5 through page 361, line 3
Page 364, line 21 through page 365, line 19
Page 376, line 10 through page 377, line 6
Page 379, line 19 through page 382, line 15
Page 386, line 18 through page 387, line 14
Page 400, line 16 through page 403, line 4
Page 403, line 11 through page 404, line 8

Deposition of Dawn Schlegel, Individually and as Corporate Designee of DHB Industries, Inc, taken

June 5, 2003

Defendants will provide Plaintiff's counsel with page and line designations upon receipt of the transcript.

Deposition of David H. Brooks taken June 5, 2003

Defendants will provide Plaintiff's counsel with page and line designations upon receipt of the transcript.

**Plaintiff and Counter-Defendant's Deposition Designations**

Deposition of Allen L. Price taken on May 7, 2003

Page 24, line 6 through Page 25, Line 21
Page 26, Line 18 through Page 27, Line 18
Page 28, Line 5 through Page 30, Line 2
Page 30, Line 13 through Page 31, Line 5
Page 34, Line 17 through Page 35, Line 7
Page 36, Line 9 through Page 37, Line 19
Page 38, Line 11 through Page 39, Line 11
Page 40, Line 16 through Page 40, Line 19
Page 45, Line 2 through Page 46, Line 20
Page 52, Line 5 through Page 54, Line 2
Page 56, Line 10 through Page 56, Line 21
Page 60, Line 19 through Page 61, Line 18
Page 63, Line 16 through Page 64, Line 4
Page 71, Line 9 through Page 71, Line 21

Deposition of Joseph Krummel taken on May 13, 2003

Page 12, Line 25 through Page 13, Line 11
Page 15, Line 8 through Page 16, Line 10
Page 18, Line 18 through Page 18, Line 25
Page 20, Line 9 through Page 21, Line 4
Page 21, Line 12 through Page 22, Line 20
Page 24, Line 8 through Page 25, Line 15
Page 28, Line 4 through Page 29, Line 12
Page 31, Line 25 through Page 32, Line 13
Page 34, Line 10 through Page 35, Line 19
Page 39, Line 8 through Page 39, Line 11
Page 39, Line 16 through Page 40, Line 10

Deposition of James W. Murray taken on May 7, 2003

Page 6, Line 19 through Page 8, Line 14
Page 12, Line 14 through Page 12, Line 12
Page 21, Line 13 through Page 23, Line 3
Page 28, Line 6 through Page 29, Line 11
Page 37, Line 16 through Page 39, Line 20
Page 48, Line 18 through Page 51, Line 8
Page 51, Line 17 through Page 53, Line 5

Deposition of Sandra Hatfield taken on July 24, 2002

Page 78, Line 8 through Page 87, Line 17
Page 105, Line 20 through Page 108, Line 21
Page 112, Line 2 through Page 115, Line 1
Page 166, Line 2 through Page 171, Line 4
Page 174, Line 12 through Page 175, Line 16
Page 178, Line 18 through Page 179, Line 18

**L.     Other Pretrial Relief.**

  None requested at this time.

Respectfully submitted,


Dated:  June 23, 2003

| MILES & STOCKBRIDGE, P.C. | PIPER RUDNICK, LLP |
|---|---|
| By:_____/s/_____ | By:_____/s/_____ |
| Robert S. Brennen | Paula M. Junghans |
| William M. Krulak | 1200 19th St NW |
| 10 Light Street | Washington, D.C.  20036 |
| Baltimore, Maryland 21202 | (202) 861-3905 |
| (410) 727-6464 | |
| | |
| Attorneys for Defendants and | Attorneys for Plaintiff and |
| Counter-plaintiffs Allen Price, | Counter-defendant Point Blank |
| Joseph Krummel, and James Murray | Body Armor, Inc. |

**READ AND APPROVED**

**DATE:**_____   _____
**Marvin J. Garbis, Judge**
**United States District Court for**
**The District of Maryland**