**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| POINT BLANK BODY ARMOR, INC. | * |
| Plaintiff, | * |
| v. | * |
| ALLEN PRICE, JOSEPH KRUMMEL, and JAMES MURRAY | * |
| Defendants. | * Civil Action No. MJG 01 CV 3256 |
| ALLEN PRICE, JOSEPH KRUMMEL, and JAMES MURRAY | * |
| Counter-plaintiffs, | * |
| v. | * |
| POINT BLANK BODY ARMOR, INC. | * |
| Counter-defendant. | * |

**OPPOSITION TO POINT BLANK'S SECOND SUPPLEMENTAL JURY INSTRUCTIONS**

Point Blank has offered three supplemental jury instructions for the Court's consideration on the last business day before trial. Defendants and Counter-Plaintiffs, by their undersigned attorneys, request that Point Blank's proposed supplemental jury instructions number 33B and 33C be rejected and that the Court prohibit Point Blank from presenting any evidence relating to the affirmative defenses to which such instructions would be directed. In support of Defendants and Counter-Plaintiffs' position, the following is offered.

(1) As stated above, the proposed jury instructions are untimely. Pursuant to the Court's April 1, 2001 order, the parties were to have submitted all proposed jury instructions on June 23, 2003. Point Blank's initial untimely supplemental jury instructions were not contested on the grounds of their untimeliness, as they were submitted after the close of business the day after the Court's deadline. Point Blank's latest offering is almost three weeks late and, being submitted on the Friday before a Monday trial, such tardiness is prejudicial to Defendants and Counter-Plaintiffs.

(2) Because proposed jury instruction number 33A is fairly neutral and otherwise unobjectionable, Defendants and Counter-Plaintiffs do not object to its inclusion.

(3) Proposed jury instructions number 33B and 33C should be rejected, however. In addition to their untimely presentation, these proposed instructions are overly case-specific and unduly argumentative regarding the evidence that Point Blank apparently believes it will present at trial. The following portion of proposed instruction 33B is almost unintelligible as a result of Point Blank's attempt to create a general hypothetical from its view of certain alleged facts:

> "If one party offers to deliver something and the other party accepts it, the act of acceptance may be evidence that the thing delivered was that which was contracted for."

(4) Defendants and Counter-Plaintiffs contend, and the record reflects, that there is no evidence that could suggest that Defendants and Counter-Plaintiffs accepted the restricted stock and the warrants to purchase restricted stock as a modification to the January 2001 agreements. On April 22, 2002 Point Blank filed its Memorandum in Response to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Cross Motion for Summary Judgment. Attached to that memorandum is the affidavit of Point Blank's President and COO, Sandra Hatfield. At page 8 ¶22, Ms. Hatfield testifies that the January 9, 2001 letter from Allen Price to Ms. Hatfield is the agreement between Point Blank

and the Defendants and Counter-Plaintiffs and that the agreement "sets forth the compensation, stock options, benefits and office expenses that Point Blank agreed to pay to Defendants." A copy of the January 9, 2001 letter was attached to Ms. Hatfield's affidavit. Ms. Hatfield, acting as Point Blank's corporate designee, later testified during her July 24, 2002 deposition, that the agreement between Point Blank and Defendants and Counter-Plaintiffs was made in January 2001. The relevant portion of Ms. Hatfield's deposition transcript, page 391, line 8 through page 392, line 21, is attached hereto as Exhibit A.

(5) The cases cited by Point Blank as support for proposed instructions 33B and 33C do not support the proposed instructions. As support for proposed instruction 33B, Point Blank directs the Court to *Maryland Supreme v. Blake Co.*, 279 Md. 531, 541-42 (1977). *Maryland Supreme* is a UCC case involving a requirements contract between the merchants. The facts are clearly inapplicable to the facts in the present dispute. In *Maryland Supreme*, a general contractor and the concrete subcontractor on a school construction project enter into a requirements contract for Blake to provide all of Blake's concrete needs for the duration of the construction project. Supreme unequivocally stated that if and when Blake was awarded the contract, it would provide the concrete and "the price [would be] guaranteed to hold throughout the job." *Id.*, at 541. Supreme attempted to modify the price per yard from $21 as originally quoted, to $27 per yard, based upon "numerous increases in [Blake's] cost of cement and other raw products." *Id.*, at p. 537. When Blake refused to pay the increased price, the dispute arose and Blake was awarded damages for Supreme's breach of contract. Supreme's argument on appeal, which was denied in the portion of the opinion cited by Point Blank, was that no contract was formed because it did not accept Blake's offer. In addition to Supreme's argument failing in light of the dictates of UCC §§2-204(1) and (2) and 2-206(1)(a), the court found this position untenable based upon

Blake's verbal acceptance of Supreme's offer to provide Blake's concrete needs at a set price. Importantly, Blake's verbal acceptance occurred immediately after the award of the contract. Supreme began delivering concrete, billing Blake at $21/yd, and accepting payment under those terms. The facts of this case render its holding inapplicable as support for Point Blank's proposed instruction No. 33B.

    (6)    As support for proposed instruction 33C, Point Blank directs the Court to *Porter v. General Boiler Casing Co.*, 284 Md. 402, 411-12 (1979). *Porter* stands for the proposition that a party can adopt a contract even without signing the contract. Porter was a laborer who was injured on the job and sought worker's compensation benefits under his union's collective bargaining agreement. General, which employed Porter, claimed that it was not bound by the collective bargaining agreement because it had not signed the agreement. General's standard practice was to hire through local unions in the area of its current job site. Wages, both regular and overtime, were paid pursuant to the terms of the collective bargaining agreement that General had requested from the union. General also paid into various other fringe benefit funds established by the union for its members. General admitted that if it did not follow the compensation and fringe benefit obligations under the collective bargaining agreement, the union would pull its workers. The court had no trouble finding that General had adopted the collective bargaining agreement because General "by its conduct, clearly manifested its intention to e bound by the terms of the contract, and subsequently adhered to the same in all material respects." *Id.*, at 409. Importantly, General reviewed the collective bargaining agreement before it began the job and hired Porter. The facts of this case render its holding inapplicable as support for Point Blank's proposed instruction No. 33C.

    (7)    Our cases demonstrate that: "[a] basic premise of contract law is that a party to a contract does not have any unilateral right to modify." *Metropolitan Life Ins. Co. v. Promenade Towers*, 84

Md.App. 702, 714 (1990).  Further, under Maryland law and generally, "silence … is insufficient to show assent to a modification" to an existing contract because "modification requires mutual assent of the parties."  *Cambridge Technologies, Inc. v. Argyle Indust., Inc.* 146 Md.App. 415, 433-34 (2002).  The *Cambridge Tech.* court found this to be especially true where, "Argyle point to nothing else in the record [other than silence] that would justify a finding that Camtec agreed to a modification of the Contract."  *Id.*

(8)     Point Blank is essentially presenting these jury instructions to complement an argument that it apparently hopes to assert at trial: the parties modified the January 2001 agreements by Point Blank presenting Defendants and Counter-Plaintiffs with a modification to certain terms of the compensation under those agreements and such a modification was accepted.  Whether denominated accord and satisfaction or some other term, Point Blank seeks to argue an avoidance, which under Rule 8 (c) Point Blank was required to plead as an affirmative defense when if filed its answer to the amended counterclaim.  The failure to plead such affirmative defenses "ordinarily results in the waiver of the defense and the exclusion of all evidence relevant only to it."  *Ritz-Craft Corp. v. Stanford Mgmt. Group*, 800F.Supp. 1312, 1316 (D.Md. 1992).  An affirmative defense may be tried with the implied consent of the parties, even if it was not properly raised, if the parties do not so consent, the attempt to raise the defense at trial "must be rejected."  *Id.  See also Westfarm Associates v. International Fabricare Inst.,* 846 F.Supp. 439, 441 (D.Md. 1993).  Defendants and Counter-Plaintiffs do not consent to Point Blank's attempt to raise such an avoidance at trial.

(9)     Point Blank should be estopped from arguing, as it appears to be its intent based upon these recently proposed supplemental jury instructions, that the actual contracts entered into by Point Blank and Defendants and Counter-Plaintiffs were "composed of more than one document" (proposed

instruction No. 33B), i.e. the certificates for restricted stock and the warrants to purchase restricted stock were documents that, perhaps with the January agreements, "composed" the agreements entered into between the parties. As referenced above, Point Blank has repeatedly stated that the employment agreements between Point Blank and the Defendants and Counter-Plaintiffs are represented by the January 9, 2001 letter from Mr. Price to Ms. Hatfield. As stated above, Point Blank has, under Rule 8 (c), waived any affirmative defenses relating to an avoidance of the claims asserted by Defendants and Counter-Plaintiffs in their amended counter-claim other than the defense presented in the answer to the amended counterclaim, i.e. that under the Maryland Wage Payment and Collection Act, the Defendants and Counter-Plaintiffs are not entitled to trebling of their unpaid wages and attorney's fees because there was a bona fide dispute relating to such unpaid wages.

Respectfully submitted,

Dated:  July 14, 2003

_____/s/_____
Robert S. Brennen (04499)
William M. Krulak, Jr. (26452)
MILES & STOCKBRIDGE P.C.
10 Light Street
Baltimore, Maryland 21202
(410) 727-6464
(410) 385-3700 (FAX)

Attorneys for Defendants and Counter-plaintiffs
Allen Price, Joseph Krummel and James Murray