**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| POINT BLANK BODY ARMOR, INC. | * |
| Plaintiff, | * |
| v. | * |
| ALLEN PRICE, JOSEPH KRUMMEL, and JAMES MURRAY | * |
| Defendants. | * Civil Action No. MJG 01 CV 3256 |
| ALLEN PRICE, JOSEPH KRUMMEL, and JAMES MURRAY | * |
| Counter-plaintiffs, | * |
| v. | * |
| POINT BLANK BODY ARMOR, INC. | * |
| Counter-defendant. | * |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION FOR COUNSEL FEES AND COSTS**

Defendants and Counter-Plaintiffs, pursuant to L.R. 109.2.b, submit the following memorandum in support of their Motion for Counsel Fees and Other Costs.

**INTRODUCTION**

In light of the verdict rendered by the Jury on July 16, 2003, the Court may award Defendants reasonable counsel fees and other costs. For the reasons set forth below, Defendants request that the Court enter such an award in the amount of $225,000.00.

## NATURE OF CASE

This case was initiated by Plaintiff's filing of the Complaint on November 1, 2001 in which Plaintiff Point Blank Body Armor, Inc. ("Point Blank") asserted claims against Defendants Allen Price and James Murray for breach of a confidentiality agreement and claims against all three Defendants for misappropriation of trade secrets under the Maryland Uniform Trade Secrets Act [MD CODE ANN. COM. LAW II § 11-1201 *et seq.*] [Document No. 1]. Point Blank simultaneously filed a motion for a temporary restraining order and a preliminary injunction. Although the temporary restraining order was granted, on an *ex parte* basis, Point Blank never filed the required bond and the order never became effective. The motion for preliminary injunction was withdrawn through agreement of the parties. On November 26, 2001, Defendants filed an Answer denying Point Blank's claims and asserting counterclaims for breach of contract, unjust enrichment, and violation of the Maryland Wage Payment and Collection Law [MD CODE ANN. LABOR AND EMPLOYMENT §3-507.1] in connection with Point Blank's failure to pay Defendants their salary for the week of September 24, 2001 [Document No. 18]. Point Blank answered the Counterclaim on December 13, 2001, denying liability and asserting several affirmative defenses including an assertion that Defendants had breached their employment agreements with Point Blank and were therefore not entitled to the salary demanded [Document No. 20].

The parties engaged in written discovery from December through March 2002, and continued to supplement their responses thereafter. Objections to discovery responses became the subject of a motion to compel, which was ruled upon by Magistrate Judge Gauvey following a series of telephonic hearings. The parties also entered into a stipulated protective order with respect to certain documents and information produced in discovery. In the meantime, Defendants attempted to sell stock that they were to have received as part of their compensation in addition to their salaries, but were unable to do so

due to restrictions placed upon the stock by Point Blank and a "stop transfer" order placed upon the shares by Point Blank.

On April 23, Defendants moved for summary judgment with respect to their counterclaim [Document 39]. In its opposition to that motion, Point Blank asserted that there were genuine issues of fact that precluded a finding that, as a matter of law, Defendants were entitled to their salary [Document 42]. While Point Blank also denied that there was any evidence that Defendants had performed work for Point Blank during their final week of employment, Point Blank asserted that that there were genuine issues of fact as to whether Defendants were barred from recovering the salary because Defendants had breached their employment obligations to Point Blank by:

- Designing products for manufacturers other than Plaintiff in breach of their duty of loyalty to Point Blank;

- Misappropriating Point Blank trade secrets; and

- Breaching their confidentiality agreements with Point Blank.

See Document 39, pp. 7 – 10. Thus, in order to succeed on their counterclaim for unpaid salary, Defendants not only needed to prove that they had performed work that entitled them to payment of that salary, but also needed to defeat Point Blank's claims that Defendants had breached confidentiality agreements and had misappropriated trade secrets. Accordingly, in order to respond to Point Blank's assertions of breach, Defendants, in their Reply memorandum, incorporated the memoranda and exhibits that they had prepared and submitted in connection with their motion for summary judgment as to Point Blank's claims. [Document No. 48, pp. 5-6, incorporating by reference Document No. 45].

In June 2002 the parties continued discovery, conducting the depositions of all three defendants as well as the deposition of Sandra Hatfield, Point Blank's President and CEO. Ms. Hatfield appeared

as the company's Rule 30(b)(6) designee with respect to, among other things, Point Blank's assertions with respect to Defendants' counterclaims.

On July 3, 2002, Defendants moved for leave to amend their counterclaim to add claims relating to stock and stock options to which they asserted entitlement under the terms of their employment with Point Blank [Document No. 57].  Point Blank opposed that motion [Document No. 58].  On February 19, 2003, the Court granted Defendants' motion for leave.

On March 4, 2003, the Court entertained oral argument with respect to the pending motions for summary judgment.  On March 12, 2003, the Court issued a Memorandum and Order in which it denied without prejudice Defendants' motion for summary judgment with respect to their original Counterclaim, denied Point Blank's cross motion for summary judgment, and granted in part and denied in part Defendants' motion for summary judgment as to Point Blank's claims.  With respect to Point Blank's claims for breach of confidentiality agreements and misappropriation of trade secrets, the Court found that there was no genuine issue of fact with respect to those claims and Defendants were entitled to judgment on those claims as a matter of law. [Document No. 80].  On April 28, 2003, Point Blank filed its answer to the Amended Counterclaim. [Document No. 85].  In light of the Court's ruling that there was no genuine issue of fact and that Defendants had not, as a matter of law, breached the confidentiality agreements or misappropriated trade secrets, Point Blank's Answer, unlike the earlier version, did not assert that the affirmative defense that Defendants' claims were barred by breach.

The matter proceeded to trial before a jury on July 14, 2003 on Defendants' Amended Counterclaim.  Despite the fact that there was no evidence in the record to suggest that Defendants were not entitled to their last week of salary, Point Blank continued to contest, to the end of the trial and in closing argument, that Defendants were not entitled to _any_ of the three forms of compensation that they

were seeking. After a two and one half day trial the jury returned a verdict finding that the Defendants had proven their entitlement to the unpaid salary, stock, and stock options and awarded damages with respect to each. The aggregate amount of damages awarded with respect to each of the three forms of compensation was as follows:

- Salary: $26,538.44
- Stock: $380,190.40
- Stock Options: $242,367.97.

In connection with those awards, the jury further found that, as to each of the three components of the wages Defendants sought to recover, there was no bona fide dispute as to Point Blank's liability.

## CLAIMS UPON WHICH DEFENDANTS PREVAILED

Defendants prevailed on all of their counterclaims submitted to the Jury at the close of trial, and had previously prevailed on Point Blank's claims through their motion for summary judgment. The claims upon which Defendants prevailed that are relevant to the instant motion are Defendants' counterclaims under MD CODE ANN. LABOR AND EMPLOYMENT §3-507.1 (Counts III, VI, and IX).

## CLAIMS UPON WHICH DEFENDANTS' DID NOT PREVAIL

Defendants have prevailed on all counts that they asserted or that Point Blank asserted. Defendants requested an award of fees under MD CODE ANN. COM. LAW II § 11-1204 in connection with Point Blank's trade secret misappropriation claims, which was denied.

## WORK PERFORMED

All of the professional work for which Defendants seek payment through the instant motion was performed by lawyers and paralegals of Miles & Stockbridge P.C.[1] The vast majority of the work was performed by Robert S. Brennen, and William M. Krulak, Jr.  Mr. Brennen has been a member of the Maryland Bar since December 1987 and a member of the Bar of this Court since February 1988.  He was an associate in the firm's litigation department from 1987 through 1995, and has been a principal since January 1996.  Mr. Brennen's hourly rate throughout this matter has been $290.00.  Mr. Krulak has been a member of the Maryland Bar since December 2000 and a member of this Court since April 2001. He has been an associate in the firm's litigation department since September 2000.  From November 2001 through November 2002, Mr. Krulak's hourly rate was $160.00.  Since November 2002, Mr. Krulak's hourly rate has been $175.00.  Richard D. Bennett, now a Judge of the Court, participated in the matter in a supervisory capacity.  His hourly rate was $325.00 prior to November 2002, and then increased to $335.00.  The total hours devoted to this matter by those lawyers thus far is as follows:

|  | **Rate** | **Total Hours in Case** |
| --- | --- | --- |
| Richard D. Bennett | 11/01 –11/02: 325/hr. | **19.6** |
|  | 11/02- 3/03:  $335/hr. | **8.1** |
| Robert S. Brennen | $290/hr | **641** |
| William M. Krulak, Jr. | 11/01- 11/02: 160/hr. | **388.3** |
|  | 11/01 – 7/03: $175/hr. | **228.3** |

---

[1] Defendants were also represented initially by the Hon. Richard E. Jackson, now a judge for the Circuit Court for Cecil County, Maryland.  Defendants are not seeking reimbursement of any fees for work performed by Judge Jackson.

In addition, other principals and associates of the firm with hourly rates ranging from $155.00 to $300.00 were consulted on an occasional basis, and legal assistants and summer law clerks with hourly rates ranging from $100.00 to $115.00 were utilized in connection with document production and some pretrial preparation.

Defendants believe that the aforementioned hourly rates are consistent with those prevailing in this District with respect to counsel of similar skill and experience.

The hours expended on the various matters involved in the representation, as well as the fees generated at the firm's standard rates, are as follows:

| **Description of Work** | **Hours Expended** | **Amount of Fees at Miles & Stockbridge's Customary Rates** |
|---|---|---|
| Initial review of pleadings; research; meetings with client in Rising Sun, Maryland; draft documents and communications with opposing counsel regarding temporary restraining order and motion for preliminary injunction. | **64** | **$13,017.00** |
| Misc. case admin, settlement negotiations. | **42.8** | **$10,536.00** |
| Factual investigation and strategy [not associated with specific motion or trial preparation]. | **22.8** | **$4,704.00** |

| | | |
|---|---|---|
| Preparation of Answer and Counterclaim. | **9.7** | **$1,903.00** |
| Preparation of written discovery; preparation of responses to written discovery; review and preparation of documents for production; review of opponent's document production; correspondence with counsel regarding objections; review motion to compel; prepare response to motion to compel; prepare for and participate in conference call hearings with Magistrate Judge on motions; prepare supplemental discovery responses. | **185.1** | **$39,619. 00** |
| Prepare for and attend depositions of clients and of Plaintiff's corporate designee. | **81.1** | **$19,303.00** |
| Prepare and file motions and multiple memoranda[2] in connection with motions and cross motions for summary judgment with respect to Plaintiff's | **280.20** | **$63,706.50** |

---

[2] Defendants' initial motion was met with a motion to strike by Point Blank citing F.R.Civ.P. 56(f) asserting that it needed more discovery. This resulted in multiple phases of briefing both before and after Defendants' depositions were conducted.

| | | |
|---|---|---|
| claims, together with affidavits and exhibits. | | |
| Prepare and file motion and memoranda in connection with motion for summary judgment on original Counterclaim, together with affidavits and exhibits. | **43.8** | **$7,654.00** |
| Prepare Amended Counterclaim, motion for leave, reply to opposition to motion for leave. | **29.6** | **$6,764.00** |
| Prepare for and attend hearing on summary judgment motions. | **52.1** | **$13,584.00** |
| Prepare and file motion for default and motion for judgment on default. | **20.4** | **$4,283.00** |
| Prepare for and attend reopened depositions of clients, and depositions of Morgan Stanley representative, David H. Brooks, and Dawn Schlegel. | **76.1** | **$19,616.00** |
| Legal research and consultation regarding issues raised by Point Blank in reopened | **6.0** | **$1,460.00** |

| | | |
|---|---|---|
| depositions regarding SEC Rule 144. | | |
| Preparation of pretrial order, jury instructions, voir dire, and other pretrial submissions; attendance at pretrial conference. | **89.9** | **$16,709.50** |
| Trial preparation including witness and exhibit preparation, review and response to Plaintiff's supplemental jury instructions, etc. | **216.9** | **$52,446.50** |
| Trial, continued preparation and consultation with clients during and immediately after trial. | **70.4** | **$17,183.50** |
| Preparation and filing of Motion for Attorneys' fees and Bill of Costs. | **35** | **$8,770.00** |
| **TOTAL** | **1325.9** | **$301,259.00** |

In addition to fees, MD CODE ANN. LABOR AND EMPLOYMENT §3-507.1 allows for recovery of "other costs." Defendants have contemporaneously herewith filed a separate Bill of Costs pursuant to L.R. 109.1 seeking an award with respect to photocopying charges, witness fees, and court reporter fees.

In addition to those "other costs," Defendants have incurred the following expenses in connection with this matter:

**EXPENSES**

| Description | Cost at Miles & Stockbridge's Customary Rates |
|---|---:|
| Long distance telephone charges | $119.72 |
| Facsimile charges | $486.00 |
| Private process server and delivery fees | $161.76 |
| Messenger and Delivery Fees | $769.52 |
| Electronic legal research | $2,448.77 |
| Travel expenses | $811.73 |
| Secretarial overtime | $66.98 |
| Postage and overnight delivery charges | $128.85 |
| Misc. [Purchase of Point Blank vest for use as Exhibit] | $456.75 |
| **TOTAL** | **$5,450.08** |

**ARGUMENT**

**I.     The Court Should Award Fees and Other Costs in This Case.**

In light of the Jury's findings that Defendants' claims were not subject to bona fide dispute, the Court has the discretion to decide whether to award fees and other costs to Defendants. As the Court of Appeals of Maryland recently stated, "[u]nquestionably, the provision for counsel fees in … §3-507.1(b) [is] remedial in nature and should therefore be given a liberal interpretation." Friolo v. Frankel, 373 Md. 501, 517, 819 A.2d 354, 364 (2003). (citing Coburn v. Coburn, 342 Md. 244, 256, 674 A.2d 951, 957

(1996); Harrison v. Pilli, 321 Md. 336, 341, 582 A.2d 1231, 1234 (1990)). Accordingly, upon a finding of an absence of a bona fide dispute, as has occurred here, "courts should exercise their discretion liberally in favor of awarding a reasonable fee, unless circumstances of the particular case indicate some good reason why a fee award is inappropriate in that case." Id. (citing Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40, 48 (1983) (holding that "a prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust'")). Defendants submit that such an award is just in the instant case and respectfully request that, consistent with a liberal interpretation of §3-507.1 and its remedial purpose, the Court award fees and other costs.

**II.     A Reasonable Fee Award in This Case is $225,000.00.**

If the Court determines that a proper exercise of its discretion warrants an award of fees and other costs in this case, then it is required to employ the so-called "lodestar" approach to determine the appropriate amount of the award. See Friolo, 373 Md. at 529, 819 A.2d at 371. Under that approach the Court must:

> [S]tart by multiplying the reasonable number of hours expended by the attorney on the litigation by a reasonable rate and then consider appropriate adjustments to the product of that multiplication.
>
> And, in considering "appropriate adjustments" the Court should consider
>
> - Whether the plaintiff has prevailed on all claims and, if not, whether the successful claims and the unsuccessful claims shared a common core of facts and legal theories such that it would be appropriate to award fees for the time spent on the entire case.
>
> - Whether the plaintiff has obtained "excellent results," in which case it might be appropriate to award fees for all hours spent, or to even award an enhanced amount
>
> - Whether the fees are reasonable under the relevant factors set forth in Rule 1.5 of the Maryland Rules of Professional Conduct.

373 Md. at 524-28, 819 A.2d at 368 –70.

As noted above, Defendants have prevailed with respect to all three of their claims for compensation and the Jury concluded that there was no bona fide dispute as to those claims. The Court has indicated that it intends to award pre-judgment interest with respect to the compensatory damages (but not the enhanced damages) awarded by the Jury, which should result in a total judgment of approximately $680,000.00. Under any reasonable measure, that would be considered to be an excellent result, and thus argues for an award of fees based upon the total amount of time spent on the case, which, as noted above, is slightly more than $300,000.00. While Defendants believe that there is ample basis for the Court to award that amount in attorneys' fees, they feel strongly that the circumstances compel an award of at least $225,000.00, or slightly less than one third of the $680,000.00 amount.

The Court has directed the parties to address the question of how much the Court should award in fees should the Court determine to do so solely with respect to Defendants' claims for unpaid salary. Defendants submit that limiting the Court's consideration to simply that component of Defendants' claims is unwarranted considering the evidence presented at trial and the Jury's determination that, like Defendants' salary claims, Defendants' claims for un-restricted stock and options to purchase un-restricted stock were similarly not the subject of a bona fide dispute. The undeniable evidence was that the "Summary of Employment Package" documents executed by Defendants on January 12, 2001 simply referred to "stock" and options to purchase "stock" which, in the context of a publicly-traded company such as DHB Industries, Inc., reasonably could only be interpreted to mean publicly-trade-able stock and options to purchase such stock, and particularly so in the context of the prior dealings between the parties. There was likewise only one reasonable interpretation of the phrase "*during* each year" with

respect to the vesting of Defendants' stock options or warrants.[3] Thus, there was abundant reason for the Jury's finding that no bona fide dispute existed with respect to those claims, and, liberally construing §3-507.1, in light of its remedial purpose, an award of fees with respect to those claims is warranted.

Even if the Court were to consider only the salary claims, an award of $225,000.00 would nonetheless be appropriate. As shown above, the fees generated in preparing the original counterclaim and the motion for summary judgment on that claim totaled $9,557.00. Counsel's general factual investigation, the exchange of written discovery, and the initial depositions of the Defendants and Point Blank's designee, all of which would have been conducted with respect to the counterclaim as well as the other claims, generated $73,183.00 in fees. Close to all of the fees generated in preparing the pretrial submissions, trial preparation and conducting the trial, which together total $86,339.00, would still have been incurred.[4] Finally, because Point Blank had asserted that Defendants' salary claims were barred by virtue of Point Blank's claims of breach of confidentiality agreements and misappropriation of trade secrets, the entire amount of fees generated in Defendants' effort to defeat those claims through summary judgment----$63,706.00----must also be considered in the context of the salary claim. Together these amounts total $232,785.00, without any separate consideration of the other costs.

The $225,000.00 sought by Defendants and Counter-Plaintiffs greatly exceeds the amount that has been recovered solely with respect to the salary claims. However, that fact must be considered in the context of the fact that the parties have known since October 2001 that there was no legitimate basis for withholding Defendants' salary, and that the only apparent, albeit irrational, reason that the salary

---

[3] It is worth noting that it was not until the Trial that Point Blank conceded that Defendants were entitled to any stock. Up to that point, consistent with the decision of DHB's Board of Directors as testified to by Ms. Schlegel, Point Blank had steadfastly maintained that Defendants had never vested in any of the stock, whether restricted or unrestricted.

[4] Indeed, the only witness that testified in Defendants' case whose testimony had no relevance to the salary claim was Ms. Dubbs, whose testimony lasted less than one half hour.

was not paid was the malice of David H. Brooks toward the Defendants and his un-denied desire to destroy them. Thus Point Blank knew or should have known that its refusal to acknowledge its obligation would expose Point Blank to a fee award, and should not be heard to complain that the amount of the fee exceeds the amount that Point Blank would have incurred had it paid the salary in the first place. Defendants submit that mechanically tying the amount of a fee award to the amount of salary recovered would run directly counter to the remedial purposes of §3-507.1, because it would allow employers, particularly those motivated by personal malice, to intimidate employees from bringing claims for salary that, while legitimate, would be easily surpassed by the high cost of litigation.

## CONCLUSION

As set forth above, appropriate application of Maryland law warrants that the Court award Defendants reasonable fees and other costs in connection with their successful claims under the Maryland Wage Payment and Collection Law. Both the Jury's verdict and the evidence presented at trial suggest that such fees and costs should be awarded in connection with each of Defendants' claims for salary, stock and stock options. Applying the lodestar approach, in light of the excellent results obtained and the un-denied malice of Mr. Brooks, an award of more than $300,000.00 could be justified. In any event, even if the Court were to consider awarding fees and other costs with respect to the salary claims only, an award of at least $225,000.00 is appropriate.

# VERIFICATION

STATE OF MARYLAND
CITY OF BALTIMORE, to wit:

I, Robert S. Brennen, hereby attest as follows:

1. I am over eighteen (18) years of age and competent to attest to the following facts, of which I have personal knowledge.

2. I am and have been a member in good standing of the Maryland Bar since December 22, 1987. I am and have been a member in good standing of the Bar of this Court since February 19, 1988.

3. I am and have been a principal with the law firm of Miles & Stockbridge P.C. since January 1, 1996.

4. Miles & Stockbridge has represented the Defendants and Counterclaimants throughout this matter. My now former partner, the Honorable Richard D. Bennett, my associate William M. Krulak, Jr. and I were directly involved in that representation.

5. In connection with the Defendants' Motion for Counsel Fees and Other Costs I have personally reviewed all time entries that have been recorded with respect to Miles & Stockbridge's representation of the Defendants in this matter. Based upon that review, I personally prepared the fee information presented in the above memorandum, and it accurately reflects the information contained in the firm's accounting records.

6. Based upon my experience in connection with the litigation of matters of similar size and complexity, I believe that the number of hours expended in this matter and expenses generated were reasonable given the factual and legal issues presented in this case. I further believe that the standard

hourly rates described above with respect to the lawyers that worked on the case are commensurate with those customarily charged by counsel with similar skill and experience in this District.

I SOLEMNLY AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE CONTENTS OF THE FOREGOING VERIFICATION ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

August 4, 2003                                   _____/s/_____
                                                 Robert S. Brennen

                                                 Respectfully submitted,

Dated:        August 4, 2003

                                                 _____/s/_____
                                                 Robert S. Brennen (04499)
                                                 William M. Krulak, Jr. (26452)
                                                 MILES & STOCKBRIDGE P.C.
                                                 10 Light Street
                                                 Baltimore, Maryland 21202
                                                 (410) 727-6464
                                                 (410) 385-3700 (FAX)

                                                 Attorneys for Defendants and Counter-Plaintiffs
                                                 Allen Price, Joseph Krummel and James Murray