IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALLEN PRICE, et al.

        Counter-Plaintiffs

   v.

POINT BLANK BODY ARMOR, INC.

        Counter-Defendant

Civil Action No.

MJG-01 CV-3256

## RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Counter-Defendant, Point Blank Body Armor, Inc. ("Point Blank"), by its undersigned counsel, hereby renews its Motion for Judgment as a Matter of Law pursuant to FED. R. CIV. P. 50. Counter-Plaintiffs, Allen Price, et al. ("Counter-Plaintiffs") have failed to present sufficient evidence for a reasonable jury to find for them on the counterclaims for (1) the value of unrestricted shares of DHB stock as of January 3, 2002, (2) the net value of stock warrants as of January 3, 2002, and (3) treble damages, attorneys fees and costs with respect to both their stock and warrant claims under the Maryland Wage Payment and Collection Act, MD. LABOR & EMP. CODE ANN., §§ 3-505 and 3.507.1.

The reasons in support of this Motion are set forth in an accompanying Memorandum of Law.

Respectfully submitted,


_____/s/_____
Paula M. Junghans (Bar No. 00589)

PIPER RUDNICK LLP
1200 Nineteenth Street NW
Washington DC  20036-2412
(202) 861-3905
(202) 689-7537 *facsimile*
paula.junghans@piperrudnick.com




_____/s/_____
Melissa L. Mackiewicz (Bar No. 27005)

PIPER RUDNICK LLP
6225 Smith Avenue
Baltimore, Maryland  21209-3600
(410) 580-3000
(410) 580-3001 *facsimile*
melissa.mackiewicz@piperrudnick.com


Attorneys for Point Blank Body Armor, Inc.

~WASH1:4074565.v1  |8/4/03
308696-1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALLEN PRICE, et al.

Counter-Plaintiffs

v.

POINT BLANK BODY ARMOR, INC.

Counter-Defendant

Civil Action No.

MJG-01 CV-3256

## MEMORANDUM IN SUPPORT OF
## RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Counter-Defendant, Point Blank Body Armor, Inc. ("Point Blank"), by its undersigned counsel, hereby renews its Motion for Judgment as a Matter of Law pursuant to FED. R. CIV. P. 50. Point Blank requests that the Court enter judgment as a matter of law as to the following issues:

(1)    Counter-Plaintiffs'[1] claims for the value of unrestricted shares of DHB stock as of January 3, 2002;

(2)    Counter-Plaintiffs' claims for the net value of stock warrants as of January 3, 2002; and

---

[1] Hereafter, the Counter-Plaintiffs will be referred to by name or collectively as "the Individuals."

(3)    Counter-Plaintiffs' claims for treble damages, attorneys fees and costs[2] with respect to both their stock and warrant claims under the Maryland Wage Payment and Collection Act, MD. LABOR & EMP. CODE ANN., §§ 3-505 and 3.507.1.

**1.    There Was Insufficient Evidence From Which A Reasonable Jury Could Have Found The Individuals Were Damaged In The Amount Claimed Because They Did Not Receive Unrestricted Stock.**

The Individuals claimed, and the jury found, that they were entitled to unrestricted, rather than restricted, stock in DHB and that they were entitled to damages equal to the value of 25% of the shares at $6 per share, the trading price on January 3, 2002. This award was premised on the finding that the Individuals would have sold the relevant number of shares on that date but for some wrongful act by Point Blank or DHB. While the evidence may have been sufficient for the jury to determine that the Individuals were entitled to unrestricted stock, it was plainly insufficient for the jury to find that any breach by Point Blank caused damages in the amount claimed.

The Individuals testified that they each received and accepted restricted stock certificates from Point Blank in March 2001. Mr. Price testified that he immediately sought advice from one of his attorneys and his stock broker at Morgan Stanley regarding the meaning of the term "RESTRICTED SECURITIES" which appeared conspicuously in red ink on his original stock certificate. The Individuals testified and themselves introduced evidence at trial (See Counter-Plaintiffs Trial Exhibit 36) that at the conclusion of Mr. Price's investigation in March 2001, each understood the term

---

[2] Point Blank recognizes that the issue of attorneys' fees and costs was not before the jury. However, if the Court determines that judgment as a matter of law should be entered with respect to the treble damage claim, that determination would apply to any award of fees and costs as well.

"RESTRICTED SECURITIES" to mean they could not sell any of their shares of DHB stock until <u>at least</u> January 2002. Each of them admitted that he affirmatively chose to retain his restricted stock certificate and did not make any attempt to sell it prior to January 2002. But, the uncontradicted evidence presented by the Individuals themselves showed that their efforts at sale at that date, when the shares were valued at approximately $6, were ineffective not because of any act on Point Blank's part, but because they failed to notify their broker that they were vested in, at most, 25% of their certificates and because they failed to surrender their certificates to the transfer agent or otherwise take steps to make any shares to which they may have been entitled marketable. <u>See</u> Trial Testimony of Catherine Dubbs. Even if the Individuals had received <u>unrestricted</u> stock, they would not have been entitled to sell all of their shares on January 3, 2002 because they would have been vested in only 25%. Accordingly, their failure to realize $6 per share for the vested portion is attributable to their own action, or lack thereof, and not to any fault of Point Blank.

Moreover, there was no basis for the jury to require Point Blank to pay to the Individuals $6 per share for the value of their vested shares. The Individuals continue to retain their stock certificates, of which 25% each is vested and, by virtue of the passage of time, entitled to be deemed non-restricted. Even if the Court finds that there was sufficient evidence to support the conclusion that the Individuals could have realized $6 per share on January 3, 2002, the principle of mitigation of damages requires that the Individuals take steps to maximize the value of the stock rather than demanding full payment from Point Blank. <u>The Serjeant Co. v. Pickett</u>, 285 Md. 186, 401 A. 2d 651 (1979). Accordingly, Point Blank requests that, at a minimum, the Court require the Individuals to sell the vested portions of their shares on the open market. Nothing currently prevents the Individuals from continuing to retain their vested shares of stock

3

and selling them on the open market, with only the difference between the sale price and $6 being payable by Point Blank. (For example, shares of DHB stock are currently trading at $4.12. Thus, if the Individuals initiated the sale of their vested shares of unrestricted stock today, at most, the damages for which Point Blank should be liable are $1.88 per share.)

Accordingly, Point Blank is entitled to judgment as a matter of law on this issue because there was insufficient evidence from which a reasonable jury could have concluded that the Individuals were damaged in the amounts claimed because they did not initially receive unrestricted shares of DHB stock.

2.    **There Was Insufficient Evidence From Which A Reasonable Jury Could Have Found That The Individuals Were Damaged In The Amounts Claimed Because They Were Not Issued Warrants To Purchase Unrestricted Stock.**

The Individuals' claims with respect to the stock warrants were premised on the theory that (a) as part of their employment packages, they were entitled to warrants to purchase unrestricted, rather than restricted, stock, and (b) had they had unrestricted warrants, they would have exercised them on a "cashless" basis and sold the stock acquired thereby on January 3, 2002. Mr. Price and Mr. Krummel both testified that their expectation that they would receive unrestricted stock was based on the fact that they had received unrestricted DHB stock when they joined Lanxide in 1998, but all three of the individuals testified that they had no prior experience with warrants or options from DHB or from any company. Mr. Price testified that in his negotiations with David Brooks, Mr. Brooks "brought up stock options as a way to grow with the company" and that Mr. Brooks stated that options "could be sold in the marketplace." Mr. Price did not describe any other discussions concerning options or warrants, or any other facts supporting the

4

inference that at the time of the employment negotiations he and his colleagues had an expectation that the warrants they would receive would entitle them to purchase unrestricted stock. Neither Mr. Krummel nor Mr. Murray had any direct communication with Mr. Brooks or anyone else at Point Blank or DHB concerning warrants or options and, accordingly, had no basis on which to believe he would receive a warrant for unrestricted stock.

Indulging all inferences from the Individuals' own testimony and the statements attributed to Mr. Brooks in the Individuals' favor does not lead inexorably to the conclusion that the warrants for which the Individuals negotiated were to have been for unrestricted stock which would have been sold on January 3, 2002. Moreover, there was no evidence that the Individuals actually made any effort to exercise their warrants or to dispose of any stock which would have been acquired thereby on January 3, 2002. Mr. Price testified that he attempted to sell 10,000 shares of DHB stock on January 3, 2002, that he was frustrated in that attempt because DHB questioned the transferability of his shares, and that he "would have" exercised his warrant on a cashless basis if DHB had not prohibited him from doing so. Mr. Price's testimony was contradicted by that of his own witness, Catherine Dubbs of Morgan Stanley, who testified that the broker was instructed to sell 40,000 shares of DHB stock for Mr. Price, that she had never been advised that he was vested in less than that amount, and that he did not give any indication of a desire to exercise or sell warrants. No different evidence was offered with respect to Messrs. Krummel and Murray.

Ms. Dubbs' testimony was corroborated by the testimony of Dawn Schlegel who testified that she informed the Securities Department at Morgan Stanley that the Individuals were not entitled to sell 100% of their shares of stock because each of the

5

Individuals had only completed nine months of their three-year contracts, and that there was no discussion with Morgan Stanley regarding the Individuals' desire to exercise their warrants. See also Counter-Plaintiffs' Trial Exhibits 37, 38, and 39.

Accordingly, Point Blank is entitled to judgment as a matter of law on this issue because there was insufficient evidence from which a reasonable jury could have concluded that Point Blank promised the Individuals warrants to purchase unrestricted shares of DHB stock, or that the Individuals were damaged by not being permitted to exercise a portion of their warrants on January 3, 2002.

> **3.** **Counter-Plaintiffs Are Not Entitled To Treble Damages On Their Stock Claims Under The Maryland Wage Payment And Collection Act Because The Evidence Overwhelmingly Demonstrated The Existence Of A Bona Fide Dispute As To That Issue.**

Section 3-507.1(b) of the Maryland Labor & Employment Article (the "Maryland Wage Payment and Collection Act"), provides that treble damages may be awarded if the jury finds that an employer withheld the wage of an employee in violation of the Act and "not as a result of a bona fide dispute." Put another way, treble damages cannot be awarded if there was a bona fide dispute over the employee's entitlement to the claimed element of compensation.

The Act does not define the term "bona fide dispute". In Admiral Mortgage v. Cooper, 357 Md. 533, 543, 745 A.2d 1026, 1031 (2000), the Court of Appeals explained:

> All of the definitions articulated by the court focus really on whether the party making or resisting the claim has a good faith basis for doing so, whether there is a legitimate dispute over the validity of the claim or the amount that is owing. ... The question, simply, is whether there was sufficient evidence adduced to permit a trier of fact to determine that [the employer] did not act in good faith when it refused to pay ... [the employee]...

6

Accord, In Re Rimell, 946 F.2d 1363, 1365 (8th Cir. 1991), cert. denied sub nom Rimell v. Mark Twain Bank, 504 U.S. 941 (1992) (defining "bona fide dispute" as "an objective basis for either a factual or legal dispute as to the validity" of a claim); Ward v. Richards & Rossano, Inc., P.S., 754 P.2d 120, 125 (Wash. App. 1988) (requiring claimant to have a "bona fide belief in the validity of his or her position with respect to [an accord and satisfaction] claim"); Estate Landscape v. Mountain States, 844 P.2d 322, 326 (Utah 1992) (bona fide dispute is a "good faith disagreement over the amount due under the contract"); S & G, Inc. v. Intermountain Power Agency, 913 P.2d 735, 739 (Utah 1996) (same); Apache East, Inc. v. Wiegand, 580 P.2d 769, 773 (Ariz. App. 1978) (under Arizona wage payment statute, treble damage penalty should not be invoked "when there is a reasonable good faith wage dispute between the employer and the employee").

Here, the evidence presented by Individuals themselves proves, rather than negates, the existence of a bona fide dispute concerning their stock and warrant claims:

a.    Although the Individuals all testified that they believed that the restricted stock and warrants were not what their contracts called for, they admitted that they affirmatively chose "not to fight that battle" during their tenure at Point Blank. Except for one comment made by Mr. Price to Sandra Hatfield, none of the Individuals registered a specific objection to the instruments issued to them at any time prior to the termination of their employment, in their exit interview, or at any time prior to initiating litigation over the issue.   None ever notified David Brooks, the person with whom the agreements had been negotiated, or Dawn Schlegel, the person who issued the stock certificates and warrants, of their claim that they were entitled to unrestricted shares of stock and warrants to purchase unrestricted shares of stock.

~WASH1:4074565.v1 |8/4/03
308696-1

b.    The unrebutted testimony of both David Brooks and Dawn Schlegel showed that in January 2001 Point Blank did not have shares of unrestricted DHB stock available to issue to the Individuals, that the Company had not issued unrestricted stock to any employee since 1998, and that, even if technically possible, it would have been economically impractical to file a registration statement with the SEC for the purpose of issuing unrestricted shares of stock to the Individuals.

c.    Messrs. Price and Krummel testified that shortly after their resignations from the Company, Mr. Brooks made threatening statements in one or two telephone calls. At the time(s) the calls occurred, the Individuals had not asserted any claim of any kind with respect to their stock or stock warrants, and there is no evidence whatsoever that Mr. Brooks was aware of their claims. Therefore, this evidence, which, if accepted, was the sole indicator of "bad faith" on the part of Point Blank, was irrelevant to the present dispute.

d.    The Individuals never asserted any claims related to the stock or the stock warrants between the time they left Point Blank's employ in September 2001 and July 3, 2002, the date on which they filed their Amended Counterclaim.[3]

e.    Point Blank did not deceive the Individuals about the nature of the stocks and warrants issued to them; the stock was conspicuously labeled "RESTRICTED

---

[3]    Although the Individuals claim to have always believed they were entitled to unrestricted stock and warrants for unrestricted stock, they did not assert any such claims in their original Counterclaim, which was filed on November 26, 2001, and limited to their claims for unpaid salary. Their Motion for Leave to File An Amended Counterclaim, which was the first notice to Point Blank of their theories with respect to the stock and the warrants, was not filed until July 3, 2002. While the Individuals may have been entitled to bring their claims at any time within the period of limitations, they are not entitled to profit by choosing not to disclose the nature of their claims and then accuse their adversary of bad faith because it did not read their minds.

~WASH1:4074565.v1 |8/4/03
308696-1

SECURITIES" in red ink and the warrants clearly expressed the fact that any stock purchased pursuant to them would also be restricted. The Individuals admitted that they did not read the warrants, did not obtain satisfactory explanations of them from their various advisors, and never asked anyone at Point Blank or DHB for an explanation of their terms.

      f.    The ambiguity of the employment memoranda and the parties' differing interpretations thereof were not the result of bad faith on the part of Point Blank but a typical dispute arising from documents which all parties agree could have been clearer.[4] The Individuals' own testimony revealed an interpretation of the "vesting" rights that strains credulity – i.e., that they could sell all their stock and then have to buy it back in order to return a pro-rated portion of it to the Company if they left the Company before the end of their contracts. Point Blank's representatives understood that the stock and warrants vested annually, which was the typical provision in the Company's employment agreements and which was expressed more clearly in the language of the warrants – documents which the Individuals never rejected. Because the Individuals never notified Point Blank of their interpretation prior to July 2002, it was not unreasonable for Point Blank to persist in its own interpretation.

      g.    The Individuals admitted that they never tendered $2 per share to exercise the warrants to purchase shares of DHB stock but opined that they "would have" exercised their warrants on a cashless basis in January 2002. The evidence of their actual

---

[4] The Individuals will, no doubt, argue that the one-page employment agreements were prepared by Point Blank and therefore should be construed against Point Blank. But, even had the long-form employment agreements drafted by Mr. Price's attorney been used, they would have not avoided the dispute which ultimately arose over restricted vs. unrestricted stock.

conduct, however, is to the contrary. Catherine Dubbs of Morgan Stanley testified that none of them requested that Morgan Stanley exercise the warrants to purchase stock in January 2002 or at any other time, and the Individuals offered no testimony that they took any steps at all toward exercise of the warrants.

In sum, all of the evidence presented at trial showed that the parties' disagreement over the terms of the stock certificates and warrants arose from the parties' vastly different positions and expectations, exacerbated by the Individuals' voluntary decision not to confront the issue until a time when the relationship between them and Point Blank had soured. Point Blank's position was neither unreasonable on the facts nor contrary to established legal precedent. Accordingly, Point Blank is entitled to judgment as a matter of law on this issue and Counter-Plaintiffs are not entitled to treble damages, attorneys fees and costs under the Maryland Wage Payment & Collection Act because the overwhelming evidence demonstrated that there was a bona fide dispute with respect to Counter-Plaintiffs stock and warrant claims.

## CONCLUSION

For the foregoing reasons, Point Blank respectfully requests that this Court enter judgment as a matter of law in favor of Point Blank as to the counterclaims for (1) the value of unrestricted shares of DHB stock as of January 3, 2002, (2) the net value of warrants for unrestricted stock resulting from the exercise of stock warrants as of January 3, 2002, and (3) treble damages and attorneys fees and costs under the Maryland Wage Payment and Collection Act, MD. LABOR & EMP. CODE ANN., §§ 3-505 and 3.507.1.

10

Respectfully submitted,


_____/s/_____
Paula M. Junghans (Bar No. 00589)

PIPER RUDNICK LLP
1200 Nineteenth Street NW
Washington DC  20036-2412
(202) 861-3905
(202) 689-7537 *facsimile*
paula.junghans@piperrudnick.com




_____/s/_____
Melissa L. Mackiewicz (Bar No. 27005)

PIPER RUDNICK LLP
6225 Smith Avenue
Baltimore, Maryland  21209-3600
(410) 580-3000
(410) 580-3001 *facsimile*
melissa.mackiewicz@piperrudnick.com

Attorneys for Point Blank Body Armor, Inc.

11

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of August, 2003, a copy of the foregoing Renewed Motion for Judgment as a Matter of Law and the memorandum in support thereof was delivered via electronic case filing to:

Robert S. Brennen, Esquire
William M. Krulak, Esquire
Miles & Stockbridge
10 Light Street
Baltimore, Maryland  21202


_____/s/_____
Melissa L. Mackiewicz