IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ALLEN PRICE, et al.<br><br>        Counter-Plaintiffs<br><br>v.<br><br>POINT BLANK BODY ARMOR, INC.<br><br>        Counter-Defendant | Civil Action No.<br><br>MJG-01 CV-3256 |

**POINT BLANK'S REPLY TO COUNTER-PLAINTIFFS' OPPOISITION TO RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

Counter-Defendant, Point Blank Body Armor, Inc. ("Point Blank"), by its undersigned counsel, submits this reply to the Opposition to Renewed Motion for Judgment as a Matter of Law  filed by the Counter-Plaintiffs, Allen Price, et al. ("Counter-Plaintiffs"). Matters not specifically addressed herein were anticipated in Point Blank's Renewed Motion for Judgment as a Matter of Law (the "Renewed Motion").

**1.   There Was Insufficient Evidence From Which A Reasonable Jury Could Have Found The Individuals Were Entitled To Receive Warrants to Purchase Unrestricted Stock.**

The Individuals suggest that there was sufficient evidence for the jury to conclude that the warrants could only be interpreted to provide for the purchase of unrestricted stock and any "contrary conclusion would have defied logic."  (Opp. at 3).  This is incorrect.  The testimony concerning the warrants was by (1) Mr. Price who confirmed that during his negotiations with Mr. Brooks, it was Mr. Brooks who suggested warrants

or options to purchase stock "as a way to grow with the company," and (2) Ms. Schlegel who testified that the issuance of warrants to purchase restricted stock was the normal practice of the Company and consistent with Mr. Brook's comment that such warrants vest annually over the life of an employment agreement. The Individuals otherwise testified that they had no prior experience with warrants or options to purchase stock, Mr. Price did not describe any other conversations regarding the warrants, and Messrs. Krummel and Murray did not participate in the negotiations with Mr. Brooks. Accordingly, there was insufficient evidence for a reasonable jury to conclude that the Individuals were entitled to warrants to purchase unrestricted stock and thus, Point Blank is entitled to judgment as a matter of law on this issue.

### 2. There Was Insufficient Evidence That The Individuals Were Damaged In The Amount Claimed Because They Did Not Receive Unrestricted Stock And Warrants to Purchase Unrestricted Stock.

The Individuals contend that Point Blank waived its argument that the Individuals did not mitigate their damages by failing to assert this affirmative defense in its Answer to the Amended Counterclaim. This is incorrect. The Individuals sought $1.4 million in damages pursuant to three causes of action under Maryland law. Maryland law recognizes the doctrine of minimization of damages, that is, the amount of damages which the Individuals might otherwise have been entitled are reduced to the extent that they failed to use all reasonable efforts to minimize their loss. Sergeant Co. v. Pickett, 285 Md. 186, 203 (1979); M & R Contractors & Builders, Inc. v. Michael, 215 Md. 340, 354-55 (1958); Garbis v. Apatoff, 192 Md. 12, 20 (1949); Groh v. South, 119 Md. 297, 301 (1913). The doctrine of minimization of damages, however, is not a defense to the Individuals' claims but "rather, it is a 'disability on (or a "no right" to) recovery of reasonably avoidable damages." Schlossberg v. Epstein, 73 Md. App. 415, 421 (1988)

2

(quoting 22 Am.Jur.2d Damages, § 30). The doctrine is predicated, not on a duty owed by the Individuals to Point Blank, but to the public policy that persons should be discouraged from wasting their resources, both physical and economic. Schlossberg, 73 Md. App. at 422. It is Federal law, however, that governs the procedural issues in this case and there is no federal requirement that mitigation of damages be plead as an affirmative defense. See Fed. R. Civ. P. 8(c); Natl. Credit Union Admin. v. First Union Capital Markets Corp., 189 F.R.D. 158, 162 (D. Md. 1999).

The evidence demonstrated that the Individuals failed to minimize their damages in this case, and there was a dearth of evidence suggesting that they did.. The Individuals contend that, but for Point Blank's issuance of restricted shares of DHB stock, they would have been able to sell their vested shares in January 2002. This is incorrect. It was undisputed that the Individuals had not plainly notified [1] their former employer of their contention that they were entitled to unrestricted shares prior to January 3, 2002 when they attempted to effect a sale. The undisputed evidence is that the reason the Individuals were unable to sell their vested shares at that time is because they each attempted to sell 100% (rather than 25%) of their shares. Although each of the Individuals testified at trial that they only intended to sell 25% of their shares, that is not what they each communicated to Morgan Stanley in December 2001 and January 2002. Catherine Dubbs of Morgan Stanley, the Individuals' own witness, testified that Morgan Stanley was instructed by the Individuals to sell 40,000 shares of DHB stock for Mr. Price, 20,000 shares for Mr. Krummel, and 5,000 shares for Mr. Murray. Ms. Dubbs

---

[1] Their only hint had been Mr. Price's comment to Ms. Hatfield in the spring of 2001 that they certificates were not what they expected; by the Individuals' own admission, they "decided not to pursue the matter further at that time." See Opp., p. 6. Ms. Hatfield would have had to have been clairvoyant to determine whether they were holding some unasserted claim in abeyance for the future or had simply acquiesced that the stock and warrants were, in fact, acceptable.

further testified that she was not aware of the employment agreements between Point Blank and the Individuals or the vesting provisions contained therein, and therefore had no reason to attempt to sell less than all of each person's shares. The Individuals introduced into evidence through Ms. Dubbs documents which showed that Morgan Stanley attempted, at the request of the Individuals, to sell 100% of each of the Individuals' shares in January 2002. See Counter-Plaintiffs' Trial Exhibits 37, 38, and 39. Ms. Dubbs explained in her testimony that she had never been advised that any of the Individuals desired to exercise or sell warrants in January 2002 or at any other time.

Ms. Dubbs' testimony was corroborated by the testimony of Dawn Schlegel who testified that she informed the Securities Department at Morgan Stanley that the Individuals were not entitled to sell 100% of their shares of stock because each of the Individuals had only completed nine months of their three-year contracts, and that there was no discussion with Morgan Stanley regarding the Individuals' desire to exercise their warrants. See also Counter-Plaintiffs' Trial Exhibits 37, 38, and 39. Ms. Dubbs also testified that after the Individuals were informed of the conversation between Ms. Schlegel and Morgan Stanley, none of them sought to submit their stock certificates to the transfer agent so that 25% (as opposed to 100%) of the shares could be sold. Indeed, each of the Individuals testified that he continued to retain his stock certificate at the time of trial..

The Individuals argue that Point Blank's stop transfer order frustrated their attempt to sell 25% of their shares, but the evidence was otherwise. Ms. Schlegel testified that the stop order is a "red flag" to alert the transfer agent that 100% of the shares may not be sold and the Company should be alerted so that it may provide guidance to the transfer agent as to the maximum number of shares (25%) that could be

4

sold. Although the Individuals now attempt to shift the responsibility for the failure of their efforts at the sale of stock to Point Blank, the only permissible inference from the evidence is that the sales were not completed on January 3, 2002 because the Individuals had not taken all necessary steps to effect such sales. Similarly, although the Individuals offer a *post hoc* rationalization of why they now contend that they would not have been permitted to exercise any portion of their warrants had they tried to do so, the undisputed evidence is that they never actually tried. Accordingly, Point Blank cannot be held liable for damages when it had no notice of either the Individuals' legal position concerning their entitlement to the warrants or of any desire on their part to exercise any warrants.

Accordingly, Point Blank is entitled to judgment as a matter of law on this issue because there was insufficient evidence for a reasonable jury to find that any breach on the part of Point Blank caused the Individuals to suffer damages in the amount claimed.

### 3. A Bona Fide Dispute Existed As To The Individuals' Claim That They Were Entitled To Unrestricted Stock And Warrants to Purchase Unrestricted Stock.

Section 3-507.1(b) of the Maryland Wage Payment and Collection Act provides that the Individuals are not entitled to treble damages if there was a bona fide dispute over the Individuals' entitlement to the claimed element of compensation. The statute requires the plaintiff to prove that any failure of the employer to pay an element of "wages" was *not* the result of a bona fide dispute. As articulated in Point Blank's Renewed Motion (at 6-10), the evidence which the Individuals themselves submitted at trial proved the *existence* rather than the *absence* of a bona fide dispute over the terms of the contracts relating to the stock and the warrants. The Individuals' argument in response on this issue amounts to little more than dogged insistence that the contracts were susceptible to only one interpretation – theirs, and ignores the evidence supporting

Point Blank's legitimate reasons for interpreting the contracts differently.[2] As this Court has noted in an analogous context, "A basic but justified disagreement regarding the terms of [a] contract does not support an award of punitive damages." Seabury Management, Inc,. v. PGA, 878 F. Supp. 771, 787 (D. Md. 1994).

Accordingly, Point Blank is entitled to judgment as a matter of law on this issue and Counter-Plaintiffs are not entitled to treble damages, attorneys fees and costs under the Maryland Wage Payment & Collection Act because there was insufficient evidence from which the jury could conclude that there was no bona fide dispute with respect to Counter-Plaintiffs' stock and warrant claims.

## CONCLUSION

For the foregoing reasons and those stated in the Renewed Motion for Judgment as a Matter of Law, Point Blank respectfully requests that this Court enter judgment as a matter of law in favor of Point Blank as to the counterclaims for (1) the value of unrestricted shares of DHB stock as of January 3, 2002, (2) the net value of warrants for unrestricted stock resulting from the exercise of stock warrants as of January 3, 2002, and (3) treble damages and attorneys fees and costs under the Maryland Wage Payment and Collection Act, MD. LABOR & EMP. CODE ANN., §§ 3-505 and 3.507.1.

---

[2] The fact that Point Blank determined at trial not to contest the Individuals' vesting in 25% of their stock certificates is not determinative of whether or not the parties had a good faith dispute over the issue at the time employment terminated (or within two weeks thereafter), which is the relevant time established by the Wage Act. This is especially so where, as here, some of the dispute had been rendered moot by the passage of time, as was the issue of whether the stock should have been restricted or unrestricted.

Respectfully submitted,

_____/s/_____
Paula M. Junghans (Bar No. 00589)

PIPER RUDNICK LLP
1200 Nineteenth Street NW
Washington DC  20036-2412
(202) 861-3905
(202) 689-7537 *facsimile*
paula.junghans@piperrudnick.com

_____/s/_____
Melissa L. Mackiewicz (Bar No. 27005)

PIPER RUDNICK LLP
6225 Smith Avenue
Baltimore, Maryland  21209-3600
(410) 580-3000
(410) 580-3001 *facsimile*
melissa.mackiewicz@piperrudnick.com

Attorneys for Point Blank Body Armor, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of August, 2003, a copy of the foregoing Reply to Opposition to Renewed Motion for Judgment as a Matter of Law was delivered via electronic case filing to:

>Robert S. Brennen, Esquire
>William M. Krulak, Esquire
>Miles & Stockbridge
>10 Light Street
>Baltimore, Maryland  21202

_/s/_
Paula M. Junghans
